**Helen C. ZALLE, Respondent,**

v.

**Melvin C. UNDERWOOD, Appellant.**

No. 49689.

Supreme Court of Missouri,

Division No. 1.

Nov. 11, 1963.

Goldenhersh, Goldenhersh, Fredericks, Newman & Lane, Henry J. Fredericks and Frank J. Lane, Jr., St. Louis, for (plaintiff) respondent.

Guilfoil, Caruthers, Symington & Montrey, John P. Montrey and Jerome F. Raskas, St. Louis, for (defendant) appellant.

HOUSER, Commissioner.

This litigation arose out of a collision between two automobiles on Lemay Ferry Road in St. Louis County. Plaintiff Helen C. Zalle brought an action for personal injuries, loss of wages, and property damage against Melvin C. Underwood, who filed a counterclaim for the same items of damage. At the close of plaintiff's evidence she dismissed her petition with prejudice, and the case proceeded against plaintiff on defendant's counterclaim. A trial jury returned a verdict for plaintiff on defendant's counterclaim, and defendant appealed. Defendant having prayed for $18,500 in his counterclaim, we have jurisdiction.

Lemay Ferry Road in St. Louis County is a four-lane highway, running generally north and south, with a slight incline to the north at the point of collision. The collision occurred in the northbound lane of

traffic closest to the east curb of Lemay Ferry Road, in front of a Steak & Shake restaurant. Two driveways, separated by a distance of approximately 80 feet, lead from Lemay Ferry Road into the Steak & Shake property. The collision occurred in front of the northernmost of the two driveways. At the point of collision the speed limit for automobile traffic was 35 miles per hour. At the southern edge of the Steak & Shake property is Catskill Street, which intersects Lemay Ferry Road. South of Catskill, on the east side of the highway, there is a Fleet service station. At the northern edge of the Steak & Shake property is Point Street, which intersects Lemay Ferry Road. North of Point and fronting on the east side of Lemay Ferry Road is a Star service station. One block north of Point Street, at the intersection of Telegraph Road with Lemay Ferry Road, there is an electric stop sign. On the date of the collision the weather was clear and the streets were dry. Neither driver saw the other automobile prior to the collision.

Mrs. Zalle testified that she had been driving south on Lemay Ferry Road, in the lane closest to the center, with her left turn signal on, intending to turn east on Point Street, but she went too far and passed the Point Street intersection. She then intended to make a left turn into the north driveway leading into the Steak & Shake property, re-enter Lemay Ferry Road, go north to Point Street, and there turn right into Point. Prior to making her left-hand turn toward the Steak & Shake driveway, with her left-turn blinker turned on, she brought her automobile to a stop in the southbound lane in Lemay Ferry Road closest to the center. She then continued south in the same traffic lane to a point on Lemay Ferry Road opposite the north driveway of the Steak & Shake property, where she stopped a second time. While stopped she noticed a line of northbound traffic in the northbound lane nearest the center line, extending south from the electric signal at the Telegraph Road intersec-

tion to a point south of the Steak & Shake property, as far as she could see. A northbound blue station wagon, in the northbound lane nearest the center line, stopped south of the north driveway of Steak & Shake. Its driver motioned for her to make a left turn and cross in front of him; signaled for her "to go on through." There was an opening in that northbound line of traffic; a "big space" between the station wagon and the next car in front of the station wagon. She then turned left in front of the station wagon and stopped a third time, with no part of her automobile extending into the northbound lane of traffic closest to the east curb of Lemay Ferry Road. She then looked to her right, to the south into that northbound lane, "to make sure there weren't any cars coming." From her position a few feet north of the north driveway of Steak & Shake she saw no traffic in that lane, at least as far south as the south driveway of Steak & Shake. She could see "quite a ways down—I couldn't say the distance. I could see pretty clearly." Then she proceeded to complete her turn by entering the northbound lane closest to the east curb and as soon as her automobile entered that lane the collision with defendant's automobile occurred— "immediately" as she "went out." She did not see the automobile of Mr. Underwood before the collision occurred, or hear a horn of any kind. She did not sound a horn.

Mr. Underwood testified that he was operating his automobile north in the northbound lane of traffic closest to the east curb of Lemay Ferry Road, traveling between 30 and 40 miles an hour as he passed Catskill Street. There were two cars in front of Mr. Underwood's car in the same lane, but they were some distance away, stopped at the stop sign at Telegraph Road. He observed the line of traffic in the lane to his left, which line extended from the electric stop sign above mentioned south to the south entrance to the Steak & Shake property. This line of traffic was "in his view" and he knew it was stopped. He

could not "truthfully" say whether he noticed a gap or space in the line of traffic at the point where the collision occurred. He had a "vague idea of a small opening" but was not aware of any gaps; did not actually see a gap; never actually "noticed this gap * * * until the impact occurred." Immediately before and at the time of the collision he was watching ahead—"looking ahead at Point"—and was slowing down, intending to pull over on Point and stop to pick up a fellow employee whom he had seen in front of the Fleet station. He was "looking directly almost ahead, out of the corner of [his] eye [he] was watching the line. * * * [His] eyes [were] concentrated in front of [him]." First he said he did not see Mrs. Zalle's car at all before the cars came into collision. Later he said that at the moment of impact he saw "the flash of a car and that was it," but did not see a blinking directional signal at any time before the impact. He could not tell whether Mrs. Zalle's car was moving and could not estimate its speed. Mr. Underwood was traveling at a speed of between 25 and 30 miles an hour at the time of impact. He did not hear a horn sounded at any time before the impact.

The verdict-directing instruction on behalf of counterclaimant Underwood, Instruction No. 2, follows:

"With reference to Defendant MELVIN UNDERWOOD'S counterclaim for damages against Plaintiff, HELEN ZALLE, the Court instructs you that it was the duty of Plaintiff to exercise the highest degree of care in the operation of her automobile on the occasion mentioned in evidence.

"In this regard, the Court instructs you that if you find and believe from the evidence that Defendant operated his automobile northwardly along the shoulder lane of Lemay Ferry Road on the occasion in question and that his automobile came into collision with an automobile operated by Plaintiff while in said lane, and that Defendant was in the exercise of the highest degree of care at all times in question, and

if you find that previous to said collision, Plaintiff stopped her automobile on the south bound half of Lemay Ferry Road and then operated her automobile in a left turn across the north bound half of Lemay Ferry Road, and if you find that Plaintiff, in making said left turn operated her automobile into the path of Defendant's automobile, when Defendant's automobile was in close and dangerous proximity, and if you find that in the exercise of the highest degree of care, Plaintiff should have seen and observed Defendant's automobile in close and dangerous proximity before she entered its path, but that she failed to so see and observe Defendant's automobile and was thereby negligent, and if you find that such negligence, if any, was a direct and proximate cause of the collision in question, and that Defendant suffered injury to his person or damage to his automobile in said collision, then in such event your verdict on the counterclaim must be in favor of the Defendant and against the Plaintiff."

The contributory negligence instruction given on behalf of Mrs. Zalle, Instruction No. 3, follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence defendant Melvin Underwood was operating his automobile in a northwardly direction on Lemay Ferry Road in the curb lane or outside lane of said Lemay Ferry Road, said Lemay Ferry Road having two lanes extending generally northward and two lanes extending generally southward, at a speed of 30 m. p. h. to 40 m. p. h. within 200 feet of the point of collision and continued at a speed in excess of 25 m. p. h. up to the point of collision and proceeded to pass a lane of stopped automobiles in the center lane of said Lemay Ferry Road also proceeding northwardly; and if you further find that a space or gap was opened in the said center lane of traffic approximately at the point of collision of a distance of approximately three car lengths; and if

you further find that defendant saw or by the exercise of the highest degree of care could have seen a condition of danger, if any, and if you further find that defendant failed to keep a lookout or watch ahead and to his left or west and that in so failing, if you so find, defendant failed to exercise the highest degree of care and was guilty of negligence and that such negligence, if you so find, directly caused defendant Melvin Underwood to be injured, if so, or if you find that such negligence of defendant Melvin Underwood, if any, directly combined and concurred with the negligence, if any, of plaintiff Helen Zalle as submitted in Instruction No. 2, and thereby contributed in part to cause defendant Melvin Underwood to be injured, if so, then in either event, your verdict shall be in favor of the plaintiff Helen Zalle and against the defendant Melvin Underwood."

It was reversible error to give Instruction No. 3 for the reason that there is not substantial evidence in this record to support a reasonable finding that the party charged with contributory negligence "had the means and ability to have so acted that a collision would have been avoided." Boehm v. St. Louis Public Service Co., Mo. Sup., 368 S.W.2d 361, 367; Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, 1. c. 25; Creech v. Riss & Co., Mo.Sup., 285 S.W.2d 554, 562. Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equipment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged to take effective action in avoidance. Negligent failure of Mr. Underwood to keep a proper lookout cannot be established in the absence of substantial evidence from which a jury could find that in the exercise of the highest degree of care he could have seen the Zalle automobile, O'Neill v. Claypool, Mo.Sup.,

341 S.W.2d 129, 135, in time thereafter to have taken effective precautionary action.

There was evidence that the brakes on Mr. Underwood's car were in perfect operating condition, and it is conceded that a collision occurred, but that is not enough. There was no evidence of the ability of Mr. Underwood to slacken the speed or bring his car to a stop at various speeds. It was not shown that Mr. Underwood saw, or could have seen, the gap or the Zalle automobile at any given time after which, by the application of the brakes, he could have taken effective precautionary action. It was not shown that he did not see the Zalle automobile at the earliest possible moment. The drivers admit that neither saw the other any significant time before the collision, and no other witness to the facts having testified, there was no evidence as to the relative speeds of and distances between the two vehicles at any given time. There is nothing in the evidence from which the jury could find where the two vehicles were located in relation to each other at any particular point in time before the impact occurred.

The precise point made by appellant, that the instruction is erroneous for failure to hypothesize sufficient facts, need not be considered because the evidence is insufficient to submit the issue of contributory negligence. "In such situation errors if any in the instructions are wholly immaterial," since the issue of contributory negligence should not have been submitted to the jury. Latta v. Robinson Erection Co., 363 Mo. 47, 248 S.W.2d 569, [5]. This is the same principle referred to in Bello v. Stuever, Mo.Sup., 44 S.W.2d 619, 620, [2], and in the many cases reported in Missouri Digest, Appeal & Error, ☞1068(3).

In an effort to salvage this instruction Mrs. Zalle contends that the only facts claimed to have been omitted are the location and general movement of the automobiles and that these facts were undisputed and need not have been hypothesized. It is argued that the jury was given only one set

of facts; that each driver testified to the location and movements of his vehicle and that he did not see the other car until the moment of impact; that no other witnesses testified as to the accident, and therefore there was no dispute as to essential facts. We disagree. No witness testified, and from the testimony of the parties it cannot be determined, where the Underwood car was when Mr. Underwood reasonably could be held to have anticipated that Mrs. Zalle was intending to make a left turn and operate her automobile through the gap into the path of his car, or whether, when the two cars came into close and dangerous proximity, there was time for him to have taken effective preventive action by slowing the speed or stopping his car, or whether he had the means at hand to do so.

 Mrs. Zalle urges that Instruction No. 3 is saved, and that it includes all of the essential facts, by virtue of its reference to Mr. Underwood's verdict-directing Instruction No. 2; that since No. 2 hypothesized the facts about which appellant is concerned, and was referred to in No. 3, the jury was fully apprised. It is true that it is not always necessary for a verdict-directing instruction to *recite* all of the facts essential to a verdict, provided it makes reference to other instructions which do properly hypothesize facts. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500. Instruction No. 3, however, does not incorporate by reference facts in Instruction No. 2 essential to the establishment of negligence on Mr. Underwood. On the contrary, No. 2 contains a finding that at all times in question Mr. Underwood was in the exercise of the highest degree of care, and the recital of facts in No. 2 relates to the negligence of *Mrs. Zalle.* It does not supply the missing links in the chain of contributory negligence sought to be locked onto Mr. Underwood. Further-

more, none of the facts submitted in No. 2 are required by No. 3 to be found, for the reference to No. 2 is in the alternative, so the jury may have found Mr. Underwood guilty of contributory negligence under erroneous Instruction No. 3, without having applied the alternative clause.

 Respondent asserts that appellant has no right to complain about the error in Instruction No. 3, because appellant failed to offer amplifying or clarifying instructions. While it is true that an adverse party will not be heard to complain in the absence of a request for a more specific instruction where an instruction is correct in its general scope and does not amount to misdirection, and is merely indefinite, "it is not incumbent upon appellant to seek a more specific instruction, supplying the *deficiency* and correcting the *error* of plaintiff's main instruction in order to render an objection thereto available." (Our emphasis.) Raymond, Missouri Instructions, Perm.Ed., Vol. 1, § 41. There is no duty upon a party to correct an erroneous and misleading instruction of his opponent. Bresler v. Kansas City Public Service Co., 239 Mo.App. 228, 186 S.W.2d 524, 530, [10]. "The mentioned rule does not apply where the questioned instruction is erroneous as a matter of law, as it was in this case * * *." Bramson v. Henley, Mo.Sup., 353 S.W.2d 609, 616, [3].

The judgment is reversed for error in giving Instruction No. 3, and the cause is remanded for a new trial on the counterclaim.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.