George H. HEBERER, Plaintiff-Appellant,

v.

Glen A. DUNCAN and Carl H. Tempel, Co-Partners, d/b/a Reebs Quality Dairy Distributing Company, Defendants-Respondents.

No. 54676.

Supreme Court of Missouri,
En Banc.

Feb. 9, 1970.

Goldenhersh & Newman and Leo M. Newman, St. Louis, for plaintiff-appellant.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, John G. Doyen, Clayton, for respondents.

FINCH, Judge.

Plaintiff sued for personal injuries, loss of earnings and property damage, to which defendants answered and filed a counterclaim. The jury found for defendants on plaintiff's petition and for plaintiff on defendants' counterclaim. Plaintiff appealed to the St. Louis Court of Appeals, which reversed and remanded for new trial. On application, the case was transferred to this court, and we now decide it "the same as an original appeal". Rule 84.05(h), V.A.M.R.; Mo.Const., Art. V, § 10, (1945), V.A.M.S. We reverse and remand for new trial.

The collision out of which this action arose occurred at the uncontrolled intersec-

tion of Prange and Claxton Avenues in the City of St. Louis. Plaintiff was traveling eastwardly on Prange, a one-way street at that point, and defendants' truck was southbound on Claxton, also a one-way street at that point.

The evidence, including photographs introduced by both parties, discloses that the street crossing where this accident occurred can properly be described as a blind intersection. The houses on the west side of Claxton are built very close to each other, and the house at the northwest corner of the intersection is constructed quite close to the sidewalk which runs along the north side of Prange. On Claxton, this house is set back only a short distance from the street and, in addition, the elevation of the small front yard is raised so as to further obstruct the view of persons approaching the intersection. There also is a row of large trees located between the edge of the sidewalk and the curb on Claxton Avenue.

Plaintiff's version of the occurrence was that at about 6:00 A.M. on April 1, 1966, he was traveling east on Prange at 25 m. p. h. When he was 50 feet from the intersection with Claxton, he took his foot off of the accelerator. At a point 40 feet from the intersection, he looked to his left, at which time he could see 15 feet up Claxton, but saw no vehicle approaching. He next looked to his right, and then back to his left. By this time he was only 5 feet from the intersection and was going approximately 20 m. p. h. At that point, he could see 36 feet up Claxton Avenue. Cars were parked on the west side of Claxton, but plaintiff observed the top of a truck cab approaching on Claxton, the speed of which he estimated at 35 m. p. h. Plaintiff applied his brakes, sounded his horn and attempted to swerve right. He testified that he did not know whether his brakes took hold, and there was no evidence of any skid marks made by plaintiff's vehicle. The collision with the defendants' truck occurred in the southeast quadrant of the intersection approximately one-half the distance between the center line and the east curbline of Claxton and at a point where the front of

defendants' truck was "not too far" south of the center line of Prange. The front of defendants' truck apparently hit the left side of plaintiff's station wagon in the general area of the left front door.

T. J. Ebitts, the driver of defendants' truck, gave a different version of the occurrence. He had turned into Claxton one block from the Prange intersection. The truck had five speeds forward and was in third gear as he approached the Prange intersection, traveling 15 to 17 m. p. h. As he approached the intersection, which he knew to be dangerous, he applied his air brakes, slowing to approximately 5 m. p. h. at about the time he entered the intersection.

When the truck cab was about 5 feet into the intersection, Ebitts first saw plaintiff's automobile coming east on Prange. At that time it was about 5 feet west of the west curbline of Claxton and was traveling at 25 to 30 m. p. h. As Ebitts observed the automobile, he did not see plaintiff looking in the direction of his truck.

Upon seeing plaintiff's automobile, Ebitts applied his air brakes in emergency fashion (his foot already was on the brake pedal), causing the brakes to lock and the wheels to skid. Skid marks on the pavement were about the length of an automobile. Defendants' truck had almost stopped by the time of the collision, its speed being estimated by Ebitts at from 1 to 5 m. p. h.

Plaintiff submitted his case on excessive speed, failure to keep a careful lookout and failure to yield the right of way. Defendants submitted a contributory negligence instruction (No. 4) in which the jury was told that its verdict must be for defendants whether or not they found defendants' driver negligent, if they believed, "First, *plaintiff failed to keep a careful lookout,* or failed to yield the right of way; * * *". (Emphasis supplied.) Plaintiff now claims that the giving of Instruction No. 4 was prejudicial error.

■ Instruction No. 4 is MAI 32.01 (formerly 28.01) and plaintiff does not com-

plain as to its form. Instead, his question is whether there was substantial evidence to support a reasonable inference that plaintiff, had he kept a careful lookout, could have observed defendants' truck in time, with the means and appliances at hand, to avoid the collision. In determining this question, we must and do consider the evidence in the light most favorable to defendants.

■ The rule is well established in this state that alleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle or person in time thereafter to have taken effective precautionary action. O'Neill v. Claypool, Mo., 341 S.W.2d 129; Zalle v. Underwood, Mo., 372 S.W.2d 98; Kratzer v. King, Mo., 401 S.W.2d 405; Butcher v. Main, Mo., 426 S.W.2d 356; Hansmann v. Rupkey, Mo.App., 428 S.W.2d 952; Stegall v. Wilson, Mo.App., 416 S.W.2d 658; Dixon v. Kinker, Mo.App., 410 S.W.2d 347. In O'Neill, Zalle and Stegall, above, the court held that the issue of failure to keep a lookout should not have been submitted because there was not sufficient evidence that the allegedly negligent party had the ability and means to take action to avoid the collision had he kept a careful lookout. On the other hand, in Kratzer, Butcher, Hansmann and Dixon, above, the court held it was proper to submit failure to keep a careful lookout. Those opinions set out the evidence from which the jury could have found the party was guilty of failing to keep a vigilant lookout and that such negligence was a proximate cause of the accident.

■ In this case there was evidence that plaintiff told a police officer shortly after the accident occurred that he did not see defendants' truck until the collision occurred. In addition, the jury could have found from Ebitts' testimony that when he observed plaintiff's station wagon 5 feet from the intersection, plaintiff was not looking in the direction from which Ebitts was coming. From such evidence, the jury could have found that plaintiff did not keep a careful lookout for vehicles approaching from the north on Claxton. However, that alone was not enough to justify submission of contributory negligence in failing to keep a careful lookout. In order for that issue to be submissible, additional evidence was necessary from which the jury could find that plaintiff's failure to keep a careful lookout was a proximate, contributing cause of the collision.

There was no testimony on behalf of the defendants to show that plaintiff, as he approached on Prange, could have seen defendants' truck on Claxton at any particular time or distance from the intersection, had he looked. Defendants refer to their Exhibit 1, which they say was a photograph taken at a point on Claxton 40 feet north of the north curbline of Prange. It shows the intersection and a house across the street on the southwest corner of the intersection. Defendants claim that this photograph "shows a distance of at least one hundred (100) feet on Prange west of Claxton," but there was no testimony to that effect and we do not so interpret the photograph. Defendants' driver, Ebitts, indicated that this photograph was taken 40 feet from Prange, but he declined to fix any distances from the intersection that a vehicle would be viewable on Prange. Furthermore, Ebitts did not testify as to the point where the photographer stood when Exhibit 1 was taken. Actually, the photograph appears to have been taken from the east side of Claxton and not from a point where defendants' truck likely would have been traveling. Exhibit 1, without further testimony, was not sufficient to show that plaintiff, had he looked, could have seen defendants' truck in time to have taken effective action to avoid the collision.

Defendants also make reference to their Exhibit 3, which is a photograph taken from some point on Prange looking east toward the intersection with Claxton. De-

fendants say that it clearly shows that if plaintiff had looked to the north when he was 60 feet west of Claxton, he could have seen a minimum of 150 feet north of the north curbline of Prange so as to observe southbound vehicles on Claxton. We cannot agree. In the first place, there was no evidence as to the point on Prange at which Exhibit 3 was taken or what that distance was from the intersection. Furthermore, the photograph does not show that a person from that point could look north on Claxton for a minimum distance of 150 feet. On the contrary, it shows a vehicle parked on the west side of Claxton near the intersection, only a part of which vehicle is visible from the point where the photograph was taken.

The only testimony by Ebitts as to the distance up Prange one on Claxton could see was when he testified on cross-examination that at the north curbline of Prange one could see up Prange to the west a distance of 100 to 150 feet. This, however, did not show that plaintiff, before reaching the intersection, could have seen defendants' truck on Claxton in time to have taken effective action to avoid the collision.

Nor was the submissibility of the issue of failure to keep a careful lookout as contributory negligence aided by plaintiff's evidence. As a matter of fact, plaintiff testified that one traveling east on Prange must be within 5 feet of Claxton before he can see south-coming traffic on Claxton, and that it was at this point that he first observed defendants' truck. There was no evidence as to stopping distances for plaintiff's station wagon at any of the various speeds of 20, 25 or 30 m. p. h. attributed to the station wagon at that point. Consequently, there was no evidence that plaintiff, at the time he testified he first could see defendants' truck, had the time and means to have taken effective action to avoid the collision.

We conclude that the evidence introduced, considered in the light most favorable to the defendants, was insufficient to justify a jury to find that plaintiff, had he looked and seen what he could have seen, would have had time to take effective action to avoid the collision. That being true, the giving of Instruction No. 4 was reversible error.

Defendants point out that plaintiff, in his verdict-directing Instruction No. 2, submitted to the jury as one basis for recovery the issue of whether defendants' driver was negligent in failing to keep a careful lookout. Consequently, say defendants, plaintiff may not now complain that they submitted in their contributory negligence instruction an asserted failure of plaintiff to keep a careful lookout.

■ We find no merit in this contention. The issue is whether there was sufficient evidence to justify the jury in finding that plaintiff failed to keep a careful lookout and that such failure was a proximate, contributing cause of the collision. This is not necessarily the same issue as whether there was sufficient evidence to justify plaintiff in submitting to the jury as a basis for recovery an alleged failure of defendants' driver to keep a careful lookout. We are not confronted on this appeal with whether the action by plaintiff in including failure to keep a careful lookout in Instruction No. 2 was erroneous, but, whether erroneous or not, the giving of Instruction No. 2 does not foreclose plaintiff from attacking the sufficiency of the evidence to justify the giving of Instruction No. 4.

Defendants cite McDonald v. Plas, Mo. App., 401 S.W.2d 929, wherein the Kansas City Court of Appeals held that where plaintiff in his verdict-directing instruction required the jury to find that plaintiff was exercising the highest degree of care, he could not complain when defendants' contributory negligence instruction also required plaintiff to exercise that same degree of care. The situations are not analogous and that case is not authority for holding that plaintiff on this appeal cannot raise an issue as to the sufficiency of the evidence to justify Instruction No. 4.

Plaintiff also asserts error in the voir dire examination of certain prospective jurors and in the action of the trial court in overruling plaintiff's objection to certain cross-examination. These are matters which, in all probability, will not arise in another trial, and therefore we need not consider them herein.

Reversed and remanded.

HENLEY, C. J., DONNELLY, SEILER, MORGAN and HOLMAN, JJ., and SHANGLER, Special Judge, concur.

STORCKMAN, J., not sitting.