**Steven Dewayne WILLIAMSON, a minor, by his next friend, Ella Mae Williamson Johnson, et al., Plaintiffs-Appellants,**

v.

**Marie A. EPPERSON, Defendant-Respondent.**

No. 9586.

Missouri Court of Appeals, Springfield District.

Oct. 7, 1975.

Theodore Beezley, Robert T. Beezley, Wayne T. Walker, Springfield, for plaintiffs-appellants.

Kenneth H. Reid, Turner, Reid & Duncan, Springfield, for defendant-respondent.

HOGAN, Judge.

This is an action for damages for personal injuries and property damage arising out of a collision between a motorcycle and an automobile. The accident occurred in clear, dry weather near the intersection of Lakeview or Owen Road and Grant Street Road north of the city of Springfield, Missouri. Plaintiff Steven Williamson sought damages for personal injuries; plaintiffs Ella Johnson and Eugene Williamson, Steven's parents, sued to recover damages for loss of Steven's services and for damage done to the motorcycle which belonged to Steven, but was "titled" in his father's name. A jury found for the defendant on all three counts of the petition and plaintiffs have appealed.

The case was quite competently presented in considerable detail, but an extensive recitation of the background facts is unnecessary for our purposes. The casualty occurred, as we have indicated, near the intersection of Grant Street Road and Owen Road north of Springfield. Owen Road is an east-west street; Grant Street Road runs north and south. Grant Street Road intersects Owen Road from the north just west of the point of collision, but does not extend south of the intersection. Approximately 75 feet north of the north edge of Owen Road, Grant Street Road bifurcates, so as one approaches Owen Road from the north, one fork of Grant Street Road curves to the west, the other to the east (left).

Plaintiff Steven Williamson, a 17-year-old high school student, had purchased a "trail bike" three days before the accident. Steven had an appointment in Springfield and in order for him to get where he was going, it was necessary for him to travel south on Grant Street Road. Immediately before the collision Steven was riding his bike south on Grant Street Road going approximately 15 or 20 miles per hour. He apparently intended to turn left on Owen Road and continue riding a short distance east to another intersection. There was evidence indicating that Steven approached the intersection on the "inside" of the east fork of Grant Street Road and that he decreased his speed but did not stop before entering the intersection.

Defendant Marie Epperson was driving west on Owen Road going approximately 35 to 40 miles per hour. Defendant's evidence was that she first saw Steven as he was "coming around on the inside" of the curve on Owen Road from Grant Street Road. Defendant applied her brakes and swerved to the left but was unable to avoid striking the motorcycle. There was evidence that the collision occurred on the south side of Owen Road; that the right front of the defendant's automobile struck the left side of the motorcycle; and that the defendant's automobile skidded 72½ feet before striking Steven and his bike. There is no question that Steven sustained serious injuries, but the nature and extent of those injuries are not in issue here.

Two questions are raised in this court. They are: 1) whether or not the trial court erred in refusing to admit prior consistent statements to rehabilitate plaintiff Steven Williamson after he had been impeached by introduction of prior statements inconsistent with his trial testimony, and 2) whether or not the trial court erred in submitting plaintiff Steven Williamson's failure to keep a careful lookout as contributory negligence because there was no substantial evidence to support the submission.

The first of these questions arose in this fashion: On direct examination, plaintiff Steven Williamson was asked when he first saw defendant's automobile before the accident. Steven replied, "About halfway through the curve." The interrogation continued: "Q. And then what did you do then, Steve? . . . A. When I seen that she was coming toward me, I kind of headed for the south, southern direction, more straight south. Q. More straight south. Why did you head more in a southerly direction instead of going around the outside of the curve? A. I thought maybe I could get over away from her toward the field."

On cross-examination, counsel for defendant asked Steven if he had seen the Epperson vehicle before the collision. Steven answered that he had. Counsel then inquired if Steven remembered giving a pretrial deposition. Steven remembered the deposition and the date it was given, whereupon he was interrogated as follows:

"Q. Steve, I'm going to ask you if at that time . . . I asked you this question and you gave me this answer:

\* \* \* \* \* \*

'Question: Did you ever see the vehicle that was driven by Mrs. Epperson at any time before the collision occurred?' And you gave the answer: 'No, sir.'

\* \* \* \* \* \*

A. No, I thought you was talking about something else. Q. All right. Then *later* (our emphasis) in your deposition, I did, further asking about where this other vehicle might have been when you first had any knowledge of its being out there at the scene, I am going to ask you if you didn't indicate it was out opposite the bushes in front of the service station? A. Yes, sir."

On redirect, counsel for the plaintiffs asked the court: "May I read other questions [from the pretrial deposition], Your Honor, which I have a right to do because he didn't read a part of it?" There was an objection from defendant's attorney, and the trial court advised plaintiff's counsel, "You can ask him questions on redirect but you can't read what he said in the deposition. That isn't proper. You can ask him further questions if you choose."

Plaintiffs' counsel then asked to be heard out of the hearing of the jury, and made the following tender:

"Your Honor, at this time, plaintiffs make an offer to read from line 11, page 16, of Steven DeWayne Williamson's deposition on through line 4 on page 17 of the deposition. We are offering this as rehabilitation of this witness because Mr. Reid out of context took question number—the question at line 8 on page 16 of the deposition where it says, 'Did you ever see the vehicle that was driven by Mrs. Epperson at any time before the collision occurred?'. And line 10 where it says, 'No, sir.' Now from 11 on, he asked him again, 'As you were going around the curve, where were you looking? Answer: I was looking into the corner. Question: By "into the corner," I'm not sure what you mean, Steven. Answer: Well, I was watching the road, but I didn't see her until I just started into the corner.' And then it goes on talking about the corner and the curve, where he first saw her, and the jury would be confused by taking that one sentence out of—one question and answer out of this deposition without me rehabilitating the witness and reading the rest of it."

In this court, plaintiffs vigorously assert that the trial court erred in refusing their offer, maintaining that they were, as a matter of law, entitled to read prior consistent statements from Steven Williamson's deposition. Defendant argues that Steven was not impeached, and even if he was, the statements offered as rehabilitation did not have that effect. The point has been briefed somewhat beyond its complexity in this instance, and we shall not attempt to review all the authorities cited.

We need not decide whether counsel's inquiry about the pretrial deposition, taken with the answers given by Steven Williamson, were sufficient to demonstrate testimonial self-contradiction, nor consider whether or not defendant's trial strategy was to elicit admissions or compromise Steven's credibility as a witness. We recognize that a preliminary question or "foundation" is not a prerequisite to the introduction of a party-opponent's admission, *Stratton v. City of Kansas City, Missouri,* 337 S.W.2d 927, 931, 933 (Mo.1960), and that the tenor of a nonparty witness' answer may determine the necessity for other, additional proof of an inconsistent statement in order to impeach the witness to the extent necessary

to permit rehabilitation by prior consistent statements. *McElhattan v. St. Louis Public Service Co.,* 309 S.W.2d 591, 595–596[2][3] (Mo.1958). In this case, it is immaterial whether Steven was testimonially impeached, for two reasons. First, to be admissible in evidence as a rehabilitating statement, the particular statement must have been made *prior* to the impeaching statement, *Nielsen v. Dierking,* 418 S.W.2d 146, 149[1] (Mo.1967); *Ayres v. Keith,* 355 S.W.2d 914, 921–922[16][17] (Mo.1962), and as far as we can determine, the statements offered here as rehabilitation were made *after* Steven had said he never saw defendant's automobile before the collision. Further and more important, the plaintiffs have come to this court on a record wholly insufficient for us to adjudicate the merits of their claim. They argue specifically that they were denied the opportunity to read certain questions and answers from a deposition, but the deposition is not preserved in the record, except for those parts which were actually offered and received. Since the deposition was not copied into the record, nor made a part of the record here in any manner, we cannot pass on the admissibility of the parts of the deposition plaintiffs sought to offer. *Heinbach v. Heinbach,* 262 Mo. 69, 86, 170 S.W. 1143, 1148[5] (1914); *Mohr v. Prinster,* 213 S.W.2d 267, 269[1] (Mo.App.1948). Moreover, it appears that counsel offered or sought to offer parts of the deposition without specifying what questions and answers he considered to be admissible. The trial court was under no obligation to sort out the admissible parts of the offer and sever them from the inadmissible and in our view was justified in rejecting the whole offer of proof, as it did. *Lott v. Kjar,* 378 S.W.2d 480, 483–484[1] (Mo.1964); *Fincher v. England,* 463 S.W.2d 82, 86[7] (Mo.App.1971).

Plaintiffs' further complaint is that the trial court erred in submitting Steven Williamson's failure to keep a careful lookout as contributory negligence because there was no evidence that Steven could have taken effective precautionary action after he saw, or should have seen defendant's vehicle moving west on Owen Road. Defendant, arguing the evidence from her point of view, maintains that Steven had ample time and wholly efficient means to avoid the collision. Plaintiffs reply by asserting that Steven did not have sufficient time and distance in which to act effectively *after* his duty to act arose. Disposition of this point requires some further restatement of the evidence.

As noted above, defendant was driving west on Owen Road immediately before the accident; plaintiff Steven Williamson was approaching Owen Road from the north, traveling southeastwardly along the curved east fork of Grant Street Road. Exhibits introduced in evidence show, in addition to the facts already recounted, that there is a gas station north of Owen Road and some distance east of the point of collision. There are two gasoline pumps immediately south of the gas station. The record discloses that defendant's effort to avoid the collision by slowing her car left skidmarks on Owen Road beginning on the north side of the street, and extending in a curve to the southwest 72½ feet to a point near the south edge of Owen Road where the collision occurred.

Steven's testimony was that he approached the bifurcation of Grant Street Road going south at a speed of "about" 35 to 40 miles per hour. As he came up to the curved east fork of the road, he "let off the gas and hit the brake" and slowed to between 15 and 20 miles per hour. On trial, Steven testified he saw defendant's vehicle "[a]bout halfway through the curve." Defendant was then "about even with the [gas] pumps [in front of] the gas station." On cross-examination, Steven testified he did not stop before entering the intersection because he thought defendant was going to turn right onto Grant Street Road. In response to the question, "Did she have her turn signal on, anything to lead you to believe that [defendant would turn north]?", Steven answered, "No, sir."

Defendant testified on her cross-examination that Steven was about halfway around the curve, or east fork of Grant Street Road, when she first saw him. She also said that when she first saw the motorcycle, she "threw on [her] brakes and swerved to the left." Defendant "guessed" her brakes had locked; in any event she had been unable to avoid striking Steven.

By extrapolation from plaintiffs' exhibit 1, an architect's scale drawing of the intersection involved, we can determine that the length of the curve negotiated by plaintiff Steven in approaching Owen Road from the bifurcation of Grant Street Road is about 100 feet, possibly a little more. The distance from the south end of the east fork of Grant Street Road to the apparent point of collision on Owen Road is 45 feet. Steven's stopping distance does not clearly appear in the record, but since plaintiffs concede in their brief that he could have stopped within 59.3 feet, we may assume he could have stopped in that distance. *Hammack v. White,* 464 S.W.2d 520, 522[4] (Mo.App. 1971).

Defendant maintains that since Steven had 95 feet in which to stop (half the curve plus 45 feet) after he saw defendant's automobile moving west on Owen Road, she was entitled to submit his failure to keep a careful lookout as contributory negligence. Plaintiffs counter by arguing that Steven was under no duty to take precautionary action until some danger of collision became apparent to him, and since he testified he "thought" defendant was going to turn right, and did not realize she was going to continue driving west until "just before the impact", defendant made no submissible case on failure to maintain a careful lookout.

■ Plaintiffs' argument is without merit. There is no doubt that the lookout submission presupposes the means and ability to take effective precautionary action after the driver charged with failure to maintain a lookout could or should have seen the other vehicle, *Heberer v. Duncan,* 449 S.W.2d 561, 563[3] (Mo. banc 1970); *Zalle v. Underwood,* 372 S.W.2d 98, 102[1–3] (Mo.1963), but plaintiffs mistakenly assume that the submissibility of Steven's contributory negligence depends solely upon their evidence. The law is that defendant is entitled to have all the evidence considered in the light most favorable to her, giving her the benefit of any favorable inferences that may reasonably be drawn therefrom, disregarding plaintiffs' evidence unless it tends to support the grounds of contributory negligence submitted in the instruction. *Jackson v. Skelly Oil Co.,* 413 S.W.2d 239, 242[2] (Mo. banc 1967); *Rickman v. Sauerwein,* 470 S.W.2d 487, 489[1] (Mo.1971); *Welch v. Sheley,* 443 S.W.2d 110, 118–119[6] (Mo.1969).

■ Applying this standard, we find that plaintiff Steven Williamson testified that he saw defendant's automobile about halfway through the curved east fork of Grant Street Road, and that defendant's vehicle was then "about even with" the pumps in front of the gas station north of Owen Road. Steven was then going 15 to 20 miles per hour, and could have stopped and avoided the collision in 59.3 feet, well within the 95 feet available to him. Disregarding Steven's testimony concerning the reasonable appearances of the situation, if his statement as to what he "thought" rises to that dignity, we may look to defendant's testimony and the physical evidence indicating that defendant saw Steven when he was about halfway through the curve and immediately began to skid and swerve to the left in an attempt to avoid the collision. So considered, the evidence justifies the inference that Steven saw, or in the exercise of the highest degree of care should have seen that the paths of the two vehicles would cross and a collision would result if he did not stop, that he could have stopped within the time and distance available, but failed to do so.

The case at hand is easily distinguishable from *Heberer v. Duncan,* supra, 449 S.W.2d 561, and *Stegall v. Wilson,* 416 S.W.2d 658

(Mo.App.1967), upon which plaintiffs rely. In *Heberer,* neither the sight nor stopping distances were shown; here, both appear of record or by admission. In *Stegall,* the defendant was obliged to rely solely upon the plaintiff's evidence to establish contributory negligence; here defendant's evidence and the reasonable inferences therefrom aid the submission. Neither precedent is controlling in the circumstances of this case.

We find no error materially affecting the merits of the action, and the judgment is accordingly affirmed.

All of the Judges concur.