**Thelma S. BUNCH and Charles Bunch, Plaintiffs-Respondents,**

v.

**James V. McMILLIAN and Empiregas Inc., of Cabool, a corporation, Defendants-Appellants.**

**No. 10309.**

Missouri Court of Appeals, Springfield District.

July 7, 1978.

Rich D. Moore, Moore & Brill, West Plains, for defendants-appellants.

No appearance, for plaintiffs-respondents.

Before STONE, P. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

This action arises out of a collision between a Ford automobile driven by plaintiff Thelma Bunch and a Chevrolet truck operated by James McMillian in the course of his employment for defendant Empiregas Inc., of Cabool. The jury awarded Thelma $1,200 on her claim for personal injuries and awarded her husband, plaintiff Charles Bunch, $100 on his derivative claim. Defendant appeals.

Defendant asserts that the verdict-directing instruction given for each plaintiff was erroneous. Each of the two verdict-directors submitted, in the disjunctive, three assignments of negligence on the part of defendant's driver McMillian. One of those assignments was that McMillian "failed to keep a careful lookout." The claim of error is that the evidence was insufficient to support the lookout submission. Defendant does not claim that the alternative submissions lacked evidentiary support. Defendant's point is well taken.

■ When a verdict-directing instruction submits in the disjunctive two or more assignments of negligence, the instruction is erroneous unless the evidence is sufficient to support all of the assignments. *Shelton v. Bruner,* 449 S.W.2d 673, 676[1] (Mo.App. 1969). A plaintiff is entitled to the benefit of the most favorable combination of facts which reasonably may be inferred from all of the evidence so long as such facts do not conflict with plaintiff's basic theory of the case or with his own judicial admissions. *Williams v. Christian,* 520 S.W.2d 139, 141[3] (Mo.App.1975); *Hansmann v. Rupkey,* 428 S.W.2d 952, 954 (Mo.App.1968).

■ Negligence consisting of a driver's failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that the driver, in the exercise of the highest degree of care to keep a careful lookout, could have seen the other vehicle or person in time thereafter to have taken "effective precautionary action." *Heberer v. Duncan,* 449 S.W.2d 561, 563[3] (Mo. banc 1970). A lookout instruction submits failure to see *and* failure to avoid injury "by 'any means supported by the evidence.'" *Lovelace v. Reed,* 486 S.W.2d 417, 419 (Mo. 1972). Although a lookout instruction need not hypothesize the means by which the driver, charged with failing to keep a careful lookout, could have avoided the collision, the evidence must support a finding that he possessed and failed to use such means. *Lovelace,* supra. *Miller v. St. Louis Public Service Company,* 389 S.W.2d 769, 772[3, 4] (Mo.1965).

■ "Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling equipment with which to warn, or braking appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged [with failure to keep a careful lookout] to take effective action in avoidance." *Zalle v. Underwood,* 372 S.W.2d 98, 102[2] (Mo.1963). Plaintiffs had the burden of showing a causal connection between the submitted negligence, i. e., failure to keep a lookout, and the injury sustained, *Shelton,* supra, at p. 680, and if the evidence leaves "the element of causal connection in the nebulous twilight of speculation, conjecture and surmise," *Shelton,* supra, at p. 680, the burden was not met and the judgment cannot stand.

■ Rarely does a plaintiff have affirmative evidence that the defendant was *not* keeping a proper lookout, *Welch v. Sheley,* 443 S.W.2d 110, 118 (Mo.1969), and the jury has the right to disbelieve entirely the testimony of a driver that he *was* looking vigilantly or that he saw another vehicle at a certain distance. *Welch,* supra, at p. 118.

The collision occurred at approximately 11:20 a. m. on March 6, 1973, on Highway 76, an east-west two-lane highway, approximately one mile west of Willow Springs. The only witnesses to the collision and the events preceding it were Thelma Bunch, who testified on behalf of herself and her co-plaintiff, and McMillian, who testified on behalf of defendant.

McMillian was the driver of a gas truck. He intended to make a delivery at the home of Duane Owens which was located on the south side of Highway 76. He intended to back into the Owens driveway which he had approached from the east. The driveway ran south from the south edge of the highway. The impact, according to the testimony of McMillian, occurred 25 or 30 feet west of the driveway. Although Thelma's testimony on the point is somewhat vague, it seems to be to the effect that the impact occurred "close to the driveway."

Plaintiff's evidence showed that there was a hill approximately 170 feet west of the point of impact. When the Ford, which was eastbound, reached the top of the hill, each vehicle became visible to the operator of the other. There was no evidence that the range of visibility exceeded 170 feet for either driver.

Thelma testified that she was driving the Ford at a speed of approximately 60 miles per hour. When she was coming over the hill, "was at the top of it," she saw the truck. She said that the truck was "across my lane and partway across the other lane" and it was facing north. She could not say whether the truck was moving or standing still. If it was moving, it was going so slow that she "couldn't tell." As soon as she saw the truck Thelma applied her brakes. She at all times remained in her righthand lane. After she applied her brakes she did not lose control of the Ford but "it was impossible for me to stop before the impact." Thelma said that the front of the Ford collided with the "left side of the truck toward the rear." At the time of the impact the truck was still heading north. Following the impact the Ford continued eastwardly and ended up in a ditch on the south side of the road.

In conjunction with Thelma's testimony, plaintiffs introduced a diagram of the scene. The diagram does not bear a scale. Thelma did not know whether it was to scale and there was no testimony that it was to scale. On the diagram Thelma placed a mark indicating that the point of impact was approximately in the middle of

the eastbound lane of the highway and near the west edge of the Owens driveway. The weather was overcast and "kind of misty." It had rained earlier that day but there was no testimony with respect to whether the highway was wet or dry.

In general the testimony of McMillian was in conflict with that of Thelma. McMillian testified that he stopped his truck west of the Owens driveway in the westbound lane. The truck was facing west. While the truck was in its stopped position, according to McMillian, the Ford driven by Thelma came over the hill. He said that the Ford was "coming very fast." Using plaintiffs' diagram McMillian traced the movement of the Ford from the moment he first saw it until the impact. That tracing shows that a portion of the Ford entered the westbound lane twice, the first time at some unstated distance west of the impact and the second time at the impact itself. McMillian stated that the impact occurred between the left front portion of the Ford and the "rear dual tire" of the truck. Using the diagram, McMillian made a mark showing that the impact occurred in the westbound lane but near the center of the highway. It was McMillian's testimony that his truck was stopped before he saw the Ford come over the hill and that it remained stopped facing west, in the westbound lane, until the moment of impact.

■ The foregoing evidence is insufficient to support the lookout submission. The only specific evidence with respect to the speed of the Ford was that it was going 60 miles per hour when it first came into McMillian's view. Unless a different time affirmatively appears, the court will take judicial notice that the time for a driver to react to "a situation demanding some action" is ¾ of a second. *Vietmeier v. Voss,* 246 S.W.2d 785, 788[5] (Mo.1952). A vehicle traveling 60 miles per hour covers 66 feet in ¾ of a second. Accordingly Thelma would have had no more than 104 feet in which to maneuver the Ford in an attempt to avoid the collision, assuming that she saw the truck, as she said she did, as soon as it was visible to her. Her testimony was

that she did apply her brakes but that it was impossible for her to avoid colliding with the truck.

■ Although there was no evidence that McMillian honked his horn (or even that he had a horn to honk) or took other means to warn Thelma of the presence of the truck, it is clear that a warning, had it been given, would not have imparted to Thelma any information which she did not already possess by reason of her own observation. It follows that any means by which McMillian could have avoided the collision would involve some movement of the truck.

The record is silent as to the speed of the Ford at the moment of impact. There was no showing of the time which elapsed between the moment the Ford first became visible to McMillian, whether or not he in fact saw it, and the moment of impact. Although Thelma testified that she applied her brakes, there was no showing of the extent, if any, to which her speed was thereby reduced. If there was no decrease in the speed of the Ford, the interval of 104 feet would have been traversed in 1.575 seconds. The time available to McMillian to have resorted to avoidance measures, after he himself had reacted to the situation, is not shown to have exceeded that amount.

The record is silent on certain factors which might have been material in determining whether McMillian possessed but failed to use means to avoid the collision after a careful lookout would have disclosed the approach of the Ford. There was no testimony as to the dimensions, equipment, or maneuvering capabilities of the gas truck. Neither side introduced photographs of the scene or of the vehicles. There was no showing of the width of the highway or the width of either of the two lanes. There was no showing of the width, character, or even the existence of a north or south shoulder. If, as Thelma thought was possible, the truck was moving, there was no showing whether it was moving north or south. If, as Thelma thought was possible, the truck was not in motion, there was no showing of the time it would take for it to attain any speed or to cover any distance in a turning movement or in a forward or backward movement.

According to Thelma the truck was facing north and she did not know whether or not it was in motion. The evidence fails to show how much room north of the front of the truck was available for a northerly movement of it. There was no showing that such a movement would have had the effect of permitting the Ford to have passed on the south side of the truck. Even if the evidence permits the inference that the Owens driveway extended to the south of the rear of the truck, there was no showing of the length of the truck nor how much of a southerly movement of the truck would have enabled the Ford to pass to the north of it. The evidence does not show what change in the location of the truck would have avoided the collision nor does it show the time, means or space available to McMillian to have effected such change. In fine the evidence did not contain any showing that McMillian, had he kept a careful lookout, could have seen the Ford "in time thereafter to have taken effective precautionary action." *Heberer v. Duncan,* 449 S.W.2d 561, 563 (Mo. banc 1970); *Bolhofner v. Jones,* 482 S.W.2d 80, 83 (Mo.App.1972).

The judgment is reversed and the cause remanded.

STONE, P. J., and TITUS, J., concur.