**Frederick H. CHARLES,
Plaintiff-Respondent,**

v.

**Margie L. RYAN, Defendant-Appellant.**

**No. WD 31185.**

Missouri Court of Appeals,
Western District.

June 2, 1981.

Max Von Erdmannsdorff, Kansas City,
for defendant-appellant.

Rubins, Kase & Rubins, Arthur J. Kase,
Morris & Foust, Max W. Foust, Lloyd L.

Messick, Kansas City, for plaintiff-respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Plaintiff Frederick H. Charles (Charles), operator of a 1971 Ford Mustang, was involved in an intersection collision with a 1974 Chevrolet Vega operated by defendant Margie L. Ryan (Ryan).

Charles filed suit against Ryan for damages for personal injuries and property damage. In answering Charles' petition, Ryan pleaded general denial coupled with the affirmative defense of contributory negligence. Ryan also filed a counterclaim against Charles for damages for personal injuries.

At the close of all the evidence Charles filed separate motions for (1) a directed verdict in his favor and against Ryan on the issue of liability and for (2) a directed verdict in his favor and against Ryan on her counterclaim. Although the trial court overruled Charles' motion for a directed verdict on the issue of liability, it sustained his motion for a directed verdict on Ryan's counterclaim without stating any grounds or reasons for doing so. Charles' cause of action was then submitted to the jury on one ground of primary negligence—Ryan's failure to keep a "careful lookout". A ten man verdict was returned which found the issues in favor of Charles and assessed his damages in the lump sum amount of $18,-500.00. Judgment was entered in favor of Charles in accordance with the jury's verdict.

Ryan appealed following an unsuccessful motion for new trial. The first of the following four points raised by Ryan is primarily dispositive of this appeal: (1) the trial court erred in not giving MAI 11.02(II) defining the terms "negligence" and "negligent" used in Charles' verdict director submitting failure to keep a "careful lookout"[1]; (2) the trial court erred in not providing the jury with a verdict form in compliance with Rule 71.06, to wit, MAI 36.02, as Charles sought damages for both personal injuries and property damage; (3) the trial court erred in failing to give Ryan's requested instructions on contributory negligence; and (4) the trial court erred in directing a verdict in favor of Charles on Ryan's counterclaim.

■ The trial court's failure to give an instruction defining "negligent" and "negligence" is the focal point of Ryan's first point. The verdict directing instruction submitting Ryan's purported failure to keep a careful lookout employed both terms. The 1977 revised "Notes on Use" appended to MAI 11.02 categorically state that "[w]hen the term 'negligent' or 'negligence' is used it must be defined." Prior to the 1977 revision cases went in different directions with respect to whether failure to define "negligent" and "negligence" constituted reversible error. The revision obviously responded to a recurring problem and was intended to eliminate the state of flux in the case law regarding when a failure to define "negligent" and "negligence" constituted reversible error. As this case was tried subsequent to the effective date of the aforementioned revision, failure of the trial court to define "negligence" and "negligent" used in Charles' verdict directing instruction constituted reversible error. Moreover, *Rakestraw v. Norris*, 478 S.W.2d 409 (Mo.App.1972), decided prior to the revision just noted, held that it was reversible error not to define "negligent" and "negligence" in a case submitted on failure to keep a careful lookout as the latter term was one of variable meaning and did not in itself denote a specific standard of care.

Charles vainly strives to hold his verdict by arguing that failure to define "negligent" and "negligence" for the jury in the instant case was harmless error because Ryan was guilty of failure to keep a careful lookout as a matter of law—hence, the only issue for the jury was the amount of damages. This argument is an outgrowth of Charles' proffered but denied motion for a

1. MAI 17.01, 17.05.

directed verdict on the issue of liability made at the close of all the evidence. Instances of granting a directed verdict in favor of a plaintiff on the issue of liability in a jury tried negligence action at the close of all the evidence, and, its natural counterpart, a determination on appellate review that a defendant was guilty of negligence as a matter of law, are exceedingly rare in the annals of Missouri case law. The paucity of cases reflects a zealously guarded effort to preserve the integrity of the jury as the ultimate fact finder in jury tried cases. Accordingly, when confronted with a claim such as that presently urged by Charles, the evidence, and all reasonable inferences to be drawn therefrom, are to be viewed in the light most favorable to Ryan, and all unfavorable evidence and inferences are to be disregarded. *Alaska Federal Savings & Loan Assn. v. Hoffman*, 485 S.W.2d 118, 120 (Mo.App.1972).

The evidence, viewed in conformity with the above, lends itself to being stated as follows. On the morning of March 25, 1976, Charles was driving a 1971 Ford Mustang in a westerly direction on 118th Street Terrace approaching the intersection of 118th Street Terrace and Delmar Street in Kansas City, Missouri. He was en route to work at the time, was traveling at a speed of 35 to 40 miles per hour, and never reduced his speed prior to impact. The posted speed limit on 118th Street Terrace was 25 miles per hour. Ryan was driving a 1974 Chevrolet Vega in a southerly direction on Delmar Street and approaching the intersection at a speed of approximately 20 miles per hour. There were "yield" signs north and south of the intersection on Delmar Street, and 118th Street Terrace was a "through" street. Ryan reduced the speed of her automobile an indeterminate amount as she approached the "yield" sign posted north of the intersection. There was no evidence as to the location of this "yield" sign with respect to the north edge of the intersection or any other fixed point. As Ryan approached the "yield" sign she first looked to her left (east), then to her right (west), and, seeing nothing, proceeded into the intersection. It was raining at the time and there was an evergreen tree in the northeast corner of the intersection. Charles saw the Ryan automobile "coming from the right as he was on top of the intersection and swerved." The front end of Ryan's automobile struck the right side of the Charles' automobile. The extent to which Charles swerved and the speed of Ryan's automobile as it entered the intersection are unknown. The respective positions of the automobiles before and at the time of impact were never described with any degree of specificity or in relation to any ascertainable fixed point. In many salient respects the evidence is more noteworthy for what it does not show than for what it does show.

■ An integral component of actionable negligence for failure to keep a careful lookout is that one charged with such negligence, in the exercise of the highest degree of care, could have seen the other vehicle involved in time thereafter to have taken "effective precautionary action". *Heberer v. Duncan*, 449 S.W.2d 561, 563 (Mo.banc 1970). The means and ability to avoid a collision are requisite evidentiary considerations when failure to keep a careful lookout is submitted. *Zalle v. Underwood*, 372 S.W.2d 98, 102 (Mo.1963). As discussed at greater length in *Zalle*, "[h]aving the means and ability to avoid a collision means not only the mechanical appliances . . . but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged [with failure to keep a careful lookout] to take effective action in avoidance." It is also well established that the operator of a motor vehicle is under no duty to maintain a constant lookout in a particular direction, and whether he is negligent in failing to keep a lookout in a particular direction is usually a jury question. *Slaughter v. Myers*, 335 S.W.2d 50, 54 (Mo. 1960).

■ When the principles mentioned above are collectively superimposed upon the evidence in proper perspective, Ryan's purported failure to keep a careful lookout was a jury question. This court reaffirms

that the trial court committed reversible error in not defining "negligence" and "negligent" used in the verdict directing instruction submitting said issue.

■ Ryan also complains that the trial court erred in furnishing a verdict form to the jury which did not comply with Rule 71.06. Insofar as here pertinent, Rule 71.06 provides that "[w]hen both damages for personal injuries and damages to property are allowed by the jury, the verdict shall state separately the amount allowed for the aggregate of the items of damage connected with the personal injury and the amount allowed for the aggregate of the items of damage connected with the injury to property." Instruction No. 6 (MAI 36.01) given by the trial court contained the form of verdict applicable when damages are sought solely for personal injuries and the verdict returned by the jury was in the lump sum amount of $18,500.00. MAI 36.02 contained the applicable form of verdict as Charles sought damages for both personal injuries and property damage. Instruction No. 6, along with Instructions Nos. 2, 3 and 4 were given at the request of Charles. The transcript reveals that Ryan "objected" and "excepted" to Instructions 2, 3, 4 and 6 at the time they were given, and that the specific objection to Instruction No. 6 relied upon by Ryan on appeal was raised in her motion for new trial.

This case was tried and submitted to the jury prior to the adoption and effective date of the 1979 revisions to MAI 36.01 and MAI 36.02. The "Notes on Use" appended to the respective 1979 revisions specifically state that "[v]erdict forms are not instructions and the Court shall not read them to the jury." No such comment was contained in the "Notes on Use" appended to MAI 36.01 and MAI 36.02 prior to their revision in 1979 and, moreover, appropriate verdict forms were attached to and made a part of overall instructions informing the jury as to the number of jurors required to return a verdict and requirements as to signatures. Following the 1979 revisions, forms of ver-

dicts were detached from overall instructions advising jurors in the particulars just mentioned.

In view of the above chronology, two cases, *Bunch v. Crader*, 369 S.W.2d 768 (Mo. App.1963),[2] and *Cobb v. Cosby*, 416 S.W.2d 222 (Mo.App.1967),[3] touch upon Ryan's second point. Both cases held that objections to verdict forms failing to comply with the command of Rule 71.06, which were raised for the first time in motions for new trial, were not timely as they came too late to give the trial courts an opportunity to correct the complained of infirmities before the respective juries were released. In both cases objections to the instructions containing the complained of verdict forms were made for the first time in the motions for new trial. The opposite is true in this case, as Ryan objected generally to Instruction No. 6 before it was given and thereafter specifically objected to it in her motion for new trial. In *Bunch v. Carder, supra*, 369 S.W.2d at 774, the court observed that "[t]he giving of a verdict form to the jury is in effect, and is tantamount to, an instruction." As verdict forms prior to the 1979 revisions to MAI 36.01 and MAI 36.02 were considered instructions and, in fact, attached to and made a part of other salient instructions, this court has difficulty in rationalizing the holdings in *Bunch v. Crader, supra*, and *Cobb v. Cosby, supra*, with Rule 70.03 (Objections to Instructions). It strikes this court that any question prior to the 1979 revisions, as to whether objections to verdict forms were timely, fell within the purview of Rule 70.03, *supra*, which Ryan more than complied with by generally objecting to Instruction No. 6 when it was given and thereafter specifically objecting to it in her motion for new trial.

Having concluded that the attendant facts in this case are distinguishable from those in *Bunch v. Crader, supra*, and *Cobb v. Cosby, supra*, ample reason exists for holding that the trial court erred in giving Instruction No. 6 and that Ryan's objection thereto was timely. Moreover, as this case

2. Springfield Court of Appeals.

3. St. Louis Court of Appeals.

must be remanded for a new trial by reason of the error raised in point one, this court is disposed to believe that the judgment below was so pervasively contaminated with prejudice that the error associated with the giving of Instruction No. 6 cannot be excised and deemed nonprejudicial. Both instances of error were compounded by the fact that the nature and extent of the personal injuries claimed by Charles were hotly contested issues, evidence offered by the parties with respect thereto was polarized, and by far the majority of the evidence introduced at trial was devoted to that single issue. Nevertheless, the trial court, in response thereto, failed to give the jury a verdict form separating the amount of damages awarded for personal injuries from the amount of damages awarded for property damage. Fundamental fairness dictates that the error inherent in Instruction No. 6 be rectified by remanding the case for a new trial on both liability and damages.

Ryan also contends that the trial court erred in refusing to give certain requested instructions regarding contributory negligence. Although the transcript sheds no light on why the instructions were refused, the briefs of both parties proceed on the assumption that the trial court's refusal was predicated on a lack of evidence to support them rather than the form in which they were drawn. This being the case, no viable purpose exists to be served by writing on point three as this court lays no claim to any prescient powers. Necessarily, the giving or refusal of instructions appertaining to contributory negligence on retrial will have to be measured by evidence introduced at that time. On retrial, it may well be that several areas unexplained or only vaguely touched upon during the original trial will be explored and dealt with in greater evidentiary detail.

 Finally, Ryan claims the trial court erred in directing a verdict in favor of Charles on her counterclaim. This point is not reviewable as no appeal was taken by Ryan from the order of the trial court sustaining Charles' motion for a directed verdict on Ryan's counterclaim. Rule 81.08(a) requires, among other things, that a notice of appeal "shall specify . . . the judgment or order appealed from." Neither the notice of appeal filed by Ryan nor the accompanying jurisdictional statement make any reference whatever to the order of the trial court sustaining Charles' motion for a directed verdict on Ryan's counterclaim. It is patent that the only appeal taken by Ryan was from the judgment rendered in favor of Charles and against Ryan in the sum of $18,500.00. Perforce, this court is limited on appeal to reviewing the judgment rendered in favor of Charles on his petition. *In re Marriage of E.A.W.*, 573 S.W.2d 689, 692 (Mo.App.1978); *Donnell v. Vigus Quarries, Inc.*, 489 S.W.2d 223, 224 (Mo.App. 1972); and *Brissette v. Brissette*, 471 S.W.2d 691, 693 (Mo.App.1971).

The judgment in favor of Charles and against Ryan in the sum of $18,500.00 is reversed and the cause of action asserted by Charles is remanded for a new trial on all issues in accordance with this opinion.

All concur.