**Grover L. MORROW, Plaintiff–Respondent,**

v.

**David L. FISHER and Kowa Printing Corporation, Defendants–Appellants.**

**No. 23581.**

Missouri Court of Appeals,
Southern District,
Division Two.

May 4, 2001.

Petition for Rehearing and Transfer Denied
May 29, 2001.

Application for Transfer Denied
Aug. 21, 2001.

John L. Oliver, Oliver, Oliver & Waltz, P.C., Cape Girardeau, for Appellants.

Joseph P. Fuchs and Phillip J. Barkett, Sikeston, for Respondent.

PREWITT, Judge.

Plaintiff and Defendant David L. Fisher were operating vehicles which collided in Miner, Missouri. Plaintiff filed a petition seeking monetary damages due to personal injuries against Defendant Fisher and Kowa Printing Corporation, Fisher's employer. Following jury trial, Plaintiff received a verdict in his favor assessing 100% of the fault to Defendants and setting Plaintiff's damages at $200,000.00.

Judgment was entered in accordance with the verdict. Defendants appeal.[1]

The facts here are briefly stated and other facts are recited in discussing the points presented by Defendants. The collision occurred at the intersection of Interstate 55 and East Malone Avenue. East Malone runs east and west and is five lanes wide with the southernmost lane for eastbound traffic intending to turn right onto the southbound onramp of Interstate 55. Traffic on that lane of East Malone is to yield to traffic turning left onto the southbound ramp from westbound East Malone. Defendant Fisher was driving his vehicle east in the southernmost lane of East Malone, with his right-hand turn signal on. Plaintiff was traveling west on East Malone and turned left, thus heading south, toward or on the ramp. The cars collided near the entrance to the ramp. On a police drawing, Plaintiff's vehicle is labeled "1" and Defendant Fisher's vehicle is labeled "2":

■ For their first point, Defendants contend the trial court erred in refusing to give Instruction B they offered, and when it was refused, Instruction C. Both instruc- tions submitted for the jury's consideration the assessment of fault to the Plaintiff using a disjunctive submission that "Plain-

1. The notice of appeal describes the appellant as "Grover L. Morrow." The signature on the notice is illegible but appears to be the same as that of defendant's counsel on the appellant's brief. Other statements in the notice indicate that the appeal is by the Defendants. Technical adherence to formal aver- ments of notice of appeal is not jurisdictional and are to be liberally construed to permit appellate review if the opposing party is not misled or harmed. *L.J.B. v. L.W.B.*, 908 S.W.2d 349, 351 (Mo.banc 1995). By that standard, we consider the notice adequate.

tiff blocked a lane reserved for moving traffic." Defendants argue that they were entitled to this instruction as it "was their theory of the case." Ultimately, Defendants offered and the trial court gave an instruction submitting Plaintiff's failure to keep a careful lookout or to yield the right-of-way.

Defendants have supplied us with no authority directly supporting their view that a vehicle turning left and proceeding at a normal speed can be negligent by blocking a lane reserved for moving traffic. We have, likewise, found no direct authority. 61A C.J.S. *Motor Vehicles* § 684 (1970), "Obstructing or Blocking Highway," states that "merely stopping temporarily and for a reasonable time does not violate" statutes and ordinances making it an offense to obstruct or block highways or streets. *See also City of Duluth v. Esterly*, 115 Minn. 64, 131 N.W. 791 (1911).[2]

It is a statutory violation to drive at such a slow speed as to impede or block the normal or reasonable movement of traffic, except when necessary for safe operation or otherwise required by law. § 304.011.1, RSMo Supp.1996. At the time Plaintiff commenced to turn left, Defendant Fisher was in a lane blockaded by a low concrete obstruction (or island), forcing the vehicle to either hit the obstruction or turn right, and the right-turn signal of Fisher's vehicle was on. Under these circumstances, Plaintiff would have the right-of-way to turn left, and he was not blocking any lane then being used in his immediate vicinity. Nor would such a temporary and reasonable time in that lane be generally considered as blocking it.

Under this point, Defendants cite *Pringle v. State Highway Comm'n*, 831 S.W.2d 735, 736 (Mo.App.1992), stating that in that case, "The Court seems to equate stopping with blocking." Whether or not *Pringle* so indicates, we conclude that a stopped vehicle is ordinarily what is contemplated when one claims that a vehicle has blocked a highway. Of course, there may be situations, such as that described in Section 304.011, where a vehicle is operated at such a slow speed that it might constitute blocking the roadway. Even if a left-turning vehicle could so block the road, there is no indication here that Plaintiff was driving at an unusually slow speed.

The trial court properly refused proposed Instructions B and C. At the time of the collision, Plaintiff had a right to turn left. If, by doing so, Plaintiff "blocked" the road, apparently every person turning left would be doing that, whether or not they had a legal right to so proceed. Defendant's suggested submission would have found fault in Plaintiff's action either way. The same actions of Plaintiff could be and were covered by an M.A.I. instruction on failure to yield the right-of-way. Point I is denied.

For their second point, Defendants assert that the trial court erred in allowing evidence of a torn rotator cuff in Plaintiff's right shoulder, as the evidence on the issue was insufficient to show a proximate causal connection between the collision and that injury, "in that Dr. Eller's opinion as to causation was incompetent and inadmissible because his opinion was based exclusively on the history given by the patient." Citing such cases as *Soper v. Bopp*, 990 S.W.2d 147, 157 (Mo.App.1999), and *Griggs*

---

**2.** "Obstruct" and "block," in the sense used here, appear to be synonymous. Among the definitions of "block," is "the state or condition of being obstructed." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 224 (2d ed. 1987). *See also* ROGET'S INTERNATIONAL THESAURUS 575 (4th ed. 1977).

*v. A.B. Chance Co.*, 503 S.W.2d 697, 704 (Mo.App.1973), Defendants contend that causation of the shoulder injury required expert testimony. If so, that occurred here.

Defendants assert that "a medical expert may not base an opinion based on medical history given by the patient as it is hearsay." They rely upon *Schears v. Missouri Pac. R.R. Co.*, 355 S.W.2d 314, 317 (Mo.banc 1962), *Harp v. Illinois Cent. R.R. Co.*, 370 S.W.2d 387, 392–93 (Mo. 1963), and *Hughey v. Graham*, 604 S.W.2d 626, 630 (Mo.App.1980). *Schears* quoted from *Holmes v. Terminal R.R. Ass'n of St. Louis*, 363 Mo. 1178, 257 S.W.2d 922, 926 (1953), with a quote which Defendants set forth in their brief:

> A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints. However, he may not base his opinion upon or testify to statements of the patient with respect to past conditions, circumstances surrounding the injury, or the manner in which the injury was received.

In *Breeding v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281, 285 (Mo.banc 1984), *Holmes* and other cases which conflicted with *Breeding* (although only *Holmes* was expressly mentioned) were overruled and medical histories from the patient were no longer inadmissible. Based upon our examination of *Breeding*, we conclude that *Schears, Harp*, and *Hughey, supra*, should no longer be followed. The present law, which we glean from *Breeding*, is that "statements made to a physician, or contained in hospital records, even if characterized as medical history, are admissible insofar as such statements are reasonably pertinent to diagnosis and treatment." *Breeding*, 679 S.W.2d at 285. As statements of history from the patient are admissible, then they may be relied upon by a medical expert and are a proper basis for opinion testimony. *See Kummer v. Cruz*, 752 S.W.2d 801, 808 (Mo.App. 1988).[3]

Defendants acknowledge that the doctor testified that, based on reasonable medical certainty and the history given him by Plaintiff, the motor vehicle collision caused the torn rotator cuff. This opinion was fortified by Plaintiff's testimony as to how the collision caused his shoulder to come into contact with his chin, and by other testimony regarding Plaintiff's problems with his shoulder at work.

Defendants state that "[N]owhere in the testimony of Dr. Eller is any effort made to establish the reliability of the history he received or the use he made of it in the plaintiff's diagnosis, care or treatment." This may go the weight of the evidence, but that is for the trier of fact. There was no error in allowing Dr. Eller to state that the collision caused the shoulder injury. This testimony was sufficient for the jury to find that the injury to Plaintiff's right shoulder was caused in the collision. Point II is denied.

For their third point, Defendants contend that the trial court erred in presenting to the jury a verdict-directing instruction submitting failure to keep a lookout on the part of Defendant, "because there was insufficient evidence ... in that the plaintiff wholly failed to offer any evidence that the Defendant ... had suffi-

---

**3.** Section 490.065.3, RSMo 1994, states:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

cient time after he could have seen the plaintiff and realized there was a reasonable appearance of danger to have avoided the accident."

 Failure to keep a lookout requires that there be substantial evidence from which the jury could find that the driver may have seen the other vehicle in time to take effective action in avoidance. *Pringle*, 831 S.W.2d at 737. In determining if such evidence exists, Plaintiff is entitled to the benefit of the most favorable combination of facts which reasonably may be inferred from all of the evidence as long as those facts do not conflict with his basic theory of the case or his judicial admissions. *Id.* So viewed, the evidence was sufficient.

In their brief, Defendants state under this point that "[i]n applying the facts of this case and the law as clearly articulated by this Court, we are not aided by Plaintiff's counsel's argument to the jury." They then discuss Plaintiff's attorney's argument. Of course, we are not concerned with that argument and whether or not it even discussed lookout. We are concerned with what can be deducted from the evidence.

Defendants urge that as Defendant Fisher was following a tractor-trailer, he could not see Plaintiff's vehicle until "the semi cleared." Then, when he realized that he was not in the correct lane, and he "pulled out," Plaintiff was there, "blocking his lane of traffic."

Defendants state that as soon as the semi cleared, Fisher saw he was not in the correct lane, looked in his rearview mirror, pulled out, accelerated, and then collided with Plaintiff's vehicle. Fisher was obligated not only to look to his rear but to look forward before aborting the right turn contemplated by the lane in which he was traveling. There was a dispute as to where the collision occurred, but if Fisher went left or straight over the concrete obstruction without first looking to see whether there was a vehicle in front of him then he failed to keep a careful lookout. It is apparent that he could have proceeded to follow the semi and turn right and having elected not to do so he should, in the highest degree of care, have looked in the direction he was going to proceed and ascertain that it was safe before driving in that direction. Fisher obviously could have avoided the collision by proceeding to turn right, but did not do so. A submissible case on failure to keep a lookout was made. Point III is denied.

 For their remaining point, Defendants state that the trial court erred in at least nine particulars to Defendants' prejudice. A point relied on violates Rule 84.04(d) when it combines multiple contentions not related to a single issue. *Wood v. Wood*, 2 S.W.3d 134, 139 (Mo.App.1999); *In re C.N.H.*, 998 S.W.2d 553, 559 n. 2 (Mo.App.1999). Such a point ordinarily does not deserve the review of an appellate court. *C.N.H.* at 559–60 n. 2 (reviewing for plain error because the case involved child custody).

 The general rule, which we find applicable here, is that such a point preserves nothing for review. *See DeCota Elec. & Indus. Supply, Inc. v. Continental Cas. Co.*, 886 S.W.2d 940, 941 (Mo.App. 1994). There could be plain error review pursuant to 84.13(c), however, plain error is rarely applied in civil cases. *Guess v. Escobar*, 26 S.W.3d 235, 241 (Mo.App. 2000). Nor do we find any manifest injustice or miscarriage of justice. Point IV is thus denied.

The judgment is affirmed.

GARRISON and RAHMEYER, JJ., concur.