Ida A. COOPER, Plaintiff–Respondent,

v.

BLUFF CITY MOBILE HOME SALES, INC., Mid America Homes, Inc., and Steve Boyers and Patty Boyers, Husband and Wife, Defendants–Appellants.

No. 24240.

Missouri Court of Appeals, Southern District, Division One.

April 26, 2002.

Motion for Rehearing and Transfer Denied May 17, 2002.

against Steve and Patty Boyers ("Boyers"), owners, officers, and employees of Bluff City. Plaintiff claimed she was damaged when Boyers forcibly entered a mobile home (temporarily occupied by her while she was awaiting delivery of her new home) and removed all of Plaintiff's furniture therefrom.[1]

In a third count, Plaintiff alleged that when Boyers put her out of her temporary home, they converted some of Plaintiff's personal property.

After a non-jury trial, the court entered a judgment that awarded Plaintiff compensatory damages on Counts I and II and punitive damages only on Count III. This appeal by Defendants followed. We affirm in part; we reverse in part.

## FACTS

We view the evidence in the light most favorable to the trial court's judgment and set forth the facts in that manner.

The following facts relate to Count I. On February 21, 1996, Plaintiff contracted to buy a new mobile home from Bluff City for $29,917.65. Plaintiff paid $1,500 down, and Bluff City arranged non-recourse financing for Plaintiff with a firm called "Greentree" for the balance of the purchase price.[2] The purchase contract obligated Bluff City to do a "complete set up" of the mobile home.

Initially, Plaintiff could not decide where to set up her mobile home. Later, in May 1996, when Plaintiff was asked to move from her brother-in-law's property, she was still undecided on a site for her home. Thereon, Boyers allowed Plaintiff to move into a mobile home owned by them until

Douglas G. Kennedy, Kennedy, Kennedy & Robbins, Poplar Bluff, for appellants.

Donald Rhodes, Bloomfield, for respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, C.J.

PER CURIAM.

Ida A. Cooper ("Plaintiff") sued Bluff City Mobile Homes, Inc. ("Bluff City"), for breach of a contract for the sale of a new mobile home (Count I). Plaintiff alleged she immediately rejected the mobile home on delivery because it had been damaged and that Bluff City breached the sales contract when it refused to deliver Plaintiff a replacement mobile home in good condition.

Plaintiff's second count, denominated "forcible entry and detainer action," was

---

1. In referring to the Boyers individually, we call them "Steve" and "Patty." We refer to them collectively as "Boyers."

2. Another firm, "Conseco," apparently ended up with the note.

she could get her home moved. This was on a rent-free basis with utilities provided. According to Plaintiff, no time limit was set on this arrangement. Soon, however, Boyers sold the mobile home temporarily occupied by Plaintiff and asked Plaintiff to move. Plaintiff did not move as requested, but she told Boyers (sometime in mid-June 1996) to move her mobile home to property owned by her mother-in-law, Shirley Holmes ("Holmes").

By June 22, 1996, Boyers had put Plaintiff's home on the Holmes property and the set-up work had been started. However, as Steve conceded at trial, Plaintiff's home "was not liveable" as of that date. Among other things, the utilities had not been hooked up, the air conditioner had not been installed, and the "skirting" was not in place. Moreover, the mobile home was damaged during the delivery process to the point that Plaintiff told Defendants she was rejecting the mobile home because of its damaged condition. Plaintiff's lengthy testimony about how her mobile home was damaged included complaints that the frame on the home was broken and bent in several places.[3] Plaintiff also testified that although her contract expressly provided that axles and wheels were included as part of what she was buying, those items had been taken away from the delivery site.

In addition to telling Defendants she would not accept the home as delivered, Plaintiff filed a complaint with the Missouri Public Service Commission ("PSC") on June 22, 1996. As a result, Tom Jenson and Gene Winn, PSC employees, inspected the mobile home on June 27, 1996. Their field inspection report is reproduced in appendix "A" to this opinion. Both Winn

and Jenson testified that if the items listed on their report had been fixed, the PSC would have deemed it a "properly made sale of a new mobile home." However, Winn also testified that the items on the report were considered "code items or set-up related items[,]" not "cosmetic" items as Steve contended. Winn explained as follows:

"Code items related to the manufacturer are items which the federal standards have a requirement for. . . .

The frame cannot be bent. I say cannot be bent, the frame has to be transportable. Now when we see a frame that is damaged, we write it up and the manufacturer has to investigate and tell us, is this damaged enough where it will or will not transport."

Steve admitted at trial that the mobile home was damaged during delivery and set-up, but claimed all the damage done was "cosmetic stuff" that could have been repaired had they been given the opportunity to do so. When asked if he considered a "bent frame" on a mobile home cosmetic only, Steve answered, "No, its [sic] not." Even so, he persisted in his "cosmetic damage only" assertion by denying that the frame on Plaintiff's mobile home was damaged and insisting that only the tongue had been bent. Steve conceded that the mobile home axles and wheels were removed and taken from the site, and this was contrary to what the contract provided.

Bluff City defended Plaintiff's breach of contract count on the theory that it and the mobile home manufacturer were denied the right to cure by repairing the damages. To support this defense, Bluff City presented evidence that Holmes told

---

**3.** Plaintiff also complained that the tongue was bent; walls of the home were buckled; doors would not shut; interior trim, paneling and carpeting were loose and unstapled; the master bedroom ceiling was cracked and water stained; a living room mirror was broken; and the kitchen floor was deformed and bowed upward.

them she would have them arrested for trespass if they came on her property to work on the home. Also, Bluff City elicited testimony from Plaintiff to the effect that when she rejected the mobile home, she told Boyers she did not want a "repaired" mobile home; that she had paid for a new mobile home and replacement of the damaged home with a new one was what she demanded as a cure. On the other hand, Defendants presented no evidence that Holmes's threat to arrest repair persons was made with Plaintiff's knowledge or approval or at her request, either express or tacit. When Plaintiff was specifically asked if she had ever told "anybody from Mid America [the mobile home manufacturer] or from Bluff City ... that they could not go into [her] mobile home to inspect it and repair it[,]" she answered, "No, I wasn't living there." Moreover, the record shows that when Boyers moved Plaintiff out of their mobile home on June 26, 1996, Plaintiff stayed the first night with Holmes, but then left because "we started having problems." There is also evidence that Plaintiff's departure from the Holmes property and her separation from her husband at that time were on less than an amicable basis, thus suggesting Holmes no longer wanted Plaintiff, her mobile home, or anyone associated with the mobile home on her property.

Plaintiff's damage evidence on her breach of contract claim included the fact that (a) she had made a $1,500 down payment, (b) had made two note payments totaling $519.90, and (c) had received a collection letter claiming that after repossession and sale of her home, she still owed $24,051.48 to the finance company.

Evidence adduced on Plaintiff's Count II claim ("forcible entry and detainer") and her conversion count included the following. Between 7:00 and 8:00 p.m. on the day Plaintiff's mobile home was moved to the Holmes property, Steve told Plaintiff she had to be out of the Boyers' mobile home by midnight of that day. Plaintiff answered that this was impossible and remained in the home. The next morning, while Plaintiff was at work, Boyers entered the home where Plaintiff was living and removed all of her property. After the police intervened, Boyers put Plaintiff's property back into the mobile home. However, four days later, on June 26, 1996, Boyers again entered the mobile home occupied by Plaintiff and removed Plaintiff's personal property. This time, they put Plaintiff's furniture and related items in a rented storage shed and her food items in a food locker. Steve conceded that neither he nor his wife had given Plaintiff written notice to vacate the mobile home nor had they obtained a court order allowing him to remove Plaintiff's property. Plaintiff testified at length about damages inflicted by Boyers on her personal property and about items taken or lost during these moves.

At the trial's conclusion, the court entered a judgment for Plaintiff and against Defendants for $29,000 on Count I. The court also entered judgment for Plaintiff and against Boyers for $5,225 on Count II. As to Count III (conversion claim), the trial court found the issues for Plaintiff and against Boyers and "affix[ed] Plaintiff's punitive damages at ... $3,500." This appeal followed.[4]

## DISCUSSION AND DECISION

### Point I: Alleged Non–Availability Of U.C.C. Rejection Remedy

■ No dispute exists about the fact that article 2 of the Uniform Commercial

---

4. A counterclaim by Bluff City against Plaintiff was ruled favorably to Plaintiff. Bluff City did not appeal from that part of the judgment.

Code (U.C.C.), §§ 400.2–101 *et seq.*, governs mobile home sales contracts.[5] *See Lawrence v. Modern Mobile Homes, Inc.,* 562 S.W.2d 729 (Mo.App.1978). Under § 400.2–601, the right of a buyer to refuse goods that do not conform to the contract for sale is defined in terms of rejecting the seller's tender.[6] *Baker v. Wade,* 949 S.W.2d 199, 200 (Mo.App.1997). Although § 400–2.601, standing alone, purports to give a non-accepting buyer the absolute right to reject goods that are nonconforming "in any respect" (sometimes called the "perfect tender" rule), *Printing Center of Texas, Inc. v. Supermind Pub. Co., Inc.,* 669 S.W.2d 779, 783 (Tex.App.1984), another provision of the U.C.C. (§ 400.2–508) gives sellers the right to cure a rejection by repair or replacement.[7] *Bowen v. Foust,* 925 S.W.2d 211, 215–16 (Mo.App.1996). Case law explains that the curative tender provision, i.e., § 400.2–508, is designed to counterbalance the perfect tender rule. *T.W. Oil, Inc. v. Con. Ed. Co. of N.Y.,* 57 N.Y.2d 574, 457 N.Y.S.2d 458, 443 N.E.2d 932, 937 (1982).

Bluff City's first claim of trial court error implicitly concedes that (1) the mobile home was nonconforming because of damage done to it during delivery, (2) Plaintiff never accepted the home, and (3) Plaintiff "seasonably" notified Bluff City of her rejection within a reasonable time after delivery of the home.[8] Bluff City's chief complaint in Point I is that the trial court erred by entering a judgment favorable to Plaintiff for *any* amount on her breach of contract claim because:

"(a) [Bluff City] was not allowed an opportunity to cure any defects in the [subject] mobile home ... as required by § 400.2–508, RSMo. in that [Bluff City] had made a timely and seasonable offer to cure ... and there was no evidence that the mobile home could not be made conforming; and,

(b) Plaintiff had a duty under § 400.2–602(2)(b) RSMo to hold goods with reasonable care and to not allow damage to the goods while in her possession in that evidence presented to the court showed that while in Plaintiff's possession, appliances and carpet were removed from the mobile home."

The argument section of Bluff City's brief relating to Point I reproduces §§ 400.2–602 and 400.2–508, and then concludes as follows:

"Defendant, Bluff City ... was never allowed an opportunity to cure any defects in the first mobile home. Although the Plaintiff sought the intervention of the Public Service Commission, the Plaintiff did not follow the direction of the Public Service Commission inspectors. Inspectors both testified that all of the code violations of the mobile home

5. All statutory references herein are to RSMo (2000) unless otherwise expressly stated.

6. In pertinent part, § 400.2–601 reads: "[I]f the goods or tender of delivery *fail in any respect* to conform to the contract, the buyer may (a) reject the whole...." (Emphasis supplied.)

7. § 400.2–508 provides:

"(1) When any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

8. § 400.2–602(1) provides that "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

could have been corrected and the mobile home sold as a new mobile home. Plaintiff claimed that she had rejected the mobile home immediately following delivery and would not be satisfied unless Bluff City . . . delivered yet another new mobile home. Bluff City . . . seasonably notified the Plaintiff of their intention to cure in Defendant's Exhibit's F, but not only was the Plaintiff not going to accept cure, Bluff City . . . was notified that they would be charged with trespass if they entered the grounds on which the mobile home sat in an attempt to correct in accordance with the directives of the Public Service Commission. There was testimony from Steve Boyers, James Vernon, Gene Winn and Tom Jenson that confirmed that the mobile home could be made conforming. Plaintiff presented no evidence to the contrary.

"Section 400.2–602(2)(b), RSMo. provides that the buyer shall hold goods upon reasonable rejection with reasonable care. But while at Plaintiff's mother-in-law's property and in Plaintiff's possession, the hot water heater, stove, refrigerator and carpet were removed from the mobile home. Plaintiff claimed possession even in the subsequent divorce proceedings, which ended November 27, 1996 (See Exhibit N)."

 The foregoing reveals a gross deviation from acceptable appellate briefing practice. The most glaring deficiency is the absence of any citations to case authority. An appellant's brief must contain authority to support his or her points relied on if the point is one for which precedent is appropriate and available, *Thummel v. King,* 570 S.W.2d 679, 687 (Mo.banc 1978), or a rationale must be advanced explaining why such authority is unavailable. *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App. 1996). If a party fails to support a conten-

tion with relevant authority or argument beyond conclusions, the point is considered abandoned. *Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 499 (Mo.banc 1995).

The issues presented by Bluff City in its first point cannot be resolved solely by an analysis of the quoted U.C.C. provisions. *See Broocke v. Broocke,* 873 S.W.2d 330, 332 (Mo.App.1994). Although § 400.2–508(1) gives a seller an unfettered right to cure "within the contract time[,]" there is "uncertainty in the Code and confusion in the case law as to the difference between a curative tender and the making of repairs." 3A Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2–508:22, at 805 (3d Ed.1995 Rev.). Moreover, there is no U.C.C. provision which expressly gives a seller the right to cure a nonconforming delivery by repairs or adjustment. *Id.* § 2–508:19, at 804. Consequently, there exists a plethora of case law, digests, treatises, and commentary that discuss what constitutes an adequate "cure" within the meaning of the U.C.C. when tendered goods are rejected for nonconformity. *See, e.g.* U.C.C. Digest, §§ 2508.1–.3; Andrea G. Nadel Annotation *Seller's Cure of Improper Tender or Delivery,* 36 A.L.R.4th 544, 544–579 (1985); 3A Ronald A. Anderson, Anderson on the Uniform Commercial Code §§ 2–508:1 through 2–508:44, at 795–814 (3d Ed.1995 Rev.).

Even so, Bluff City has not cited a single case to support its argument nor offered any rationale on why some part of the abundant case authority is not relevant to its Point I claim of trial court error. Bluff City's failure in this regard is particularly perplexing since one purpose of the U.C.C. is "to make uniform the law among the various jurisdictions[,]" § 400.1–102(2)(c), *Robinson v. Citicorp Nat. Services, Inc.,* 921 S.W.2d 52, 54 (Mo.App.1996); consequently, case authority from other jurisdic-

tions interpreting relevant U.C.C. provisions would be persuasive, especially when, as here, there is no on-point Missouri authority for the issues raised. In summary, Bluff City's bare citation of U.C.C. provisions does not comply with the requirements of Rule 84.04 because the statutes themselves provide no basis for a finding of error. *Broocke*, 873 S.W.2d at 332.

Another briefing deficiency is that Bluff City's argument beneath Point I is devoid of citations to the 290 page transcript and 34 page legal file where evidence allegedly exists to support Bluff City's claim of no opportunity to cure or that it could have made the mobile home conforming. This violates Rule 84.04(i) which mandates that the argument section of a brief "shall have specific page references to the legal file or the transcript." An argument that violates Rule 84.04(i) wholly fails to preserve any error for review. *Maupin v. Bearden*, 752 S.W.2d 403, 404 (Mo.App.1988).

Even though these briefing deficiencies justify a finding that Bluff City has abandoned this point on appeal, we have reviewed the record *ex gratia* and conclude that the trial court's entry of a judgment for Plaintiff and against Bluff City on Plaintiff's breach of contract count is supported by substantial evidence, is not against the weight of the evidence and does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). However, because Bluff City's brief on this point does not cite any controlling authority to support its contentions beyond the bare language of §§ 400.2–508 and 400.2–602, we find that a detailed opinion on these issues would have no precedential value.[9] Accordingly, we reject Bluff City's first point without further discussion. *See* Rule 84.16.

### Point II: Error In Amount Of Damages Awarded On Contract Claim

■ Defendants' second point charges the trial court erred when it awarded Plaintiff $29,000 on her breach of contract claim. Relying on § 400.2–711, they argue that Plaintiff's damages were limited to "so much of the price as has been paid[;]" consequently, Defendants insist Plaintiff could only recover her down payment ($1,500) and two monthly installments she made in the amount of $259.95 each.[10]

In making this argument, Defendants acknowledge that (a) Plaintiff signed a note for the purchase price balance, namely $28,417.65, (b) the company financing the purchase price balance did not have

---

9. Suffice it to say, the record supports one or more of the following findings by the trial court: (a) Bluff City, by refusing to acknowledge frame damage to the mobile home, never communicated an unconditional intention to cure, *see Allied Semi–Conductors v. Pulsar Components Int'l.*, 907 F.Supp. 618, 624–26 (E.D.N.Y.1995); *Stephenson v. Frazier*, 399 N.E.2d 794, 797–98 (Ind.App.1980); (b) Bluff City's offer to cure was inadequate as it only referenced the PSC report and never offered return of the axles and wheels for the mobile home; (c) Bluff City's right to cure by repair was cut off by the subverted confidence of Plaintiff (measured by a reasonable person standard) in the adequacy of the cure for structural parts, i.e., frame and foundation repair, *see Asciolla v. Manter Oldsmobile–Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270, 274

(1977); *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441, 240 A.2nd 195, 205 (1968); (d) Plaintiff's mother-in-law was acting for herself and not Plaintiff when she threatened to have repair people arrested if they came on her land to make mobile home repairs; and (e) the evidence did not compel a finding that the disappearance of appliances and carpet from the mobile home resulted from the breach of any duty imposed on Plaintiff.

10. In pertinent part, § 400.2–711(1) provides, "Where ... the buyer rightfully rejects ... then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract ..., the buyer may ... recover[] *so much of the price as has been paid.*" (Emphasis supplied.)

recourse to Defendants when Plaintiff failed to pay, (c) the finance company repossessed and sold the mobile home when Plaintiff failed to pay the note, (d) as of November 11, 1997, the finance company notified Plaintiff there was a deficiency of $15,424.25, and (e) at trial Plaintiff put in evidence a collection letter claiming Plaintiff owed $24,051.48 on the subject note as of August 17, 2000. Moreover, Defendants recognize that in *Funding Systems Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624 (Mo.App.1979), the western district held that "[b]oth the amounts paid before suit and the additional amount which will have to be paid under the judgment resulting from the suit [by the entity that provided financing] are equally part of 'the price as has been paid' which the buyer is entitled to recover upon rejection of the goods ... under the provisions of U.C.C. Sec. 2–711." 597 S.W.2d at 637.

Defendants insist, however, that *King Louie* is not authority for treating the $24,051.48, which the finance company claims Plaintiff still owes, as part of the "price as has been paid" within the meaning of § 400.2–711. Defendants argue (in conclusory fashion and without citation to any authority), that until there is proof Plaintiff paid the deficiency on the note, or that a judgment has been entered against her for a deficiency, or some evidence that she would have to pay a deficiency amount, the $24,051.48 collection letter cannot constitute evidence of the "price as has been paid."

As explained at length in Point I, where, as here, appellants neither cite relevant authority nor explain why authority is not available, this court is justified in considering the point abandoned. *Steve Spicer Motors, Inc. v. Gilliam*, 19 S.W.3d 153, 160 (Mo.App.2000). The function of an appellate court is to examine the asserted trial court error, not to serve as an advocate for any party to an appeal. *Perkel v. Stringfellow*, 19 S.W.3d 141, 147 (Mo.App.2000). Even so, we have *ex gratia* reviewed the record and conclude that Boyers' point lacks merit.

In reaching this conclusion, we need not decide if a buyer who has justifiably rejected nonconforming goods can include an alleged deficiency on the purchase money note as part of "the price as has been paid" within the meaning of § 400.2–711, when as here, the alleged deficiency has not been reduced to judgment. This follows because § 400.2–715 permits a buyer who has justifiably rejected goods to recover incidental and consequential damages proximately caused by the seller's breach of contract. *King Louie*, 597 S.W.2d at 637; *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 279 Cal.Rptr. 533, 547 (1991). "*Amounts* paid or *owed to the buyer's financier* have been held to be a proper element of the buyer's consequential damages where the seller knew of the loan." (Emphasis supplied.) *U.S. Roofing*, 279 Cal.Rptr. at 547; *Evans v. Graham Ford, Inc.*, 2 Ohio App.3d 435, 442 N.E.2d 777, 781 (1981). *U.S. Roofing, Evans*, and authority cited in those cases provide a tenable basis for the trial court's implicit inclusion of the finance company's claim of $24,051.48 as an element of Plaintiff's consequential damages. Point denied.[11]

---

**11.** The finance company's claim ($24,051.48), Plaintiff's down payment ($1,500), and her two installment payments ($519.90) do not total the judgment amount ($29,000). However, Plaintiff's pleading and evidence included a claim for $25,000 for other "incidental and consequential damages[,]" i.e., that Plaintiff was without a home, lost a "good credit rating," and incurred travel and telephone expenses. On appeal, Defendants only complaint is about the inclusion of $24,051.48 in the damage award.

*Point III: Challenges To The Judgment Rendered On Count II*

In the third point relied on, Boyers charge the trial court committed reversible error in awarding Plaintiff $5,225 on her forcible entry and detainer claim. (Count II). It appears to this court that Boyers propose the trial court erred in four ways: (a) by finding Plaintiff's evidence sufficient to establish all elements of a forcible entry and detainer action; (b) in setting the damage amount at $2,225 because the "damages awarded were not in accordance with those allowed by statute[;]" (c) by refusing to dismiss Plaintiff's Count II pleading for failure to state a cause of action upon which relief could be granted; and (d) by hearing and deciding Count II when it did not have jurisdiction over the claim.

Even if we misconceive exactly what Boyers are claiming, it is clear that this point contains multifarious claims, that is, it groups numerous incidents of error into a single "point relied on" where the incidents of error do not relate to a single issue. *DeCota Elec. & Indus. Sup. Inc. v. Continental Casualty Co.*, 886 S.W.2d 940, 941 (Mo.App.1994). When, as here, appellants collapse disparate contentions of error into a single point relied on, they violate Rule 84.04(d). *Id.* Such a point ordinarily does not deserve the review of an appellate court. *In re C.N.H.*, 998 S.W.2d 553, 559–60 n. 2 (Mo.App.1999) (reviewing for plain error because the case involved child custody).

The general rule, which we find applicable here (except for the jurisdictional issue), is that such a point preserves nothing for review. *See Morrow v. Fisher*, 51 S.W.3d 468, 473 (Mo.App.2001). Although there could be plain error review of prongs (a), (b), and (c) of Point III pursuant to Rule 84.13(c), review under that rule is rarely applied in civil cases. *Id.* We de-cline to review for plain error. In making that decision, we note that prong (c) was left wholly undeveloped and unmentioned in the argument part of Boyers' brief; accordingly, it was abandoned. It is not within the province of this court to decide an argument that is merely asserted but not developed. *Bratt v. Cohn*, 969 S.W.2d 277, 283 (Mo.App.1998).

We turn now to prong (d) of Point III in which Boyers argue that Count II was "improperly filed in Circuit Court" and as such, the circuit judge who tried the case lacked jurisdiction over Plaintiff's Count II claim. Boyers assert this is so because § 534.060 mandates that such cases be heard and determined by an associate circuit judge unless a circuit judge is transferred or assigned to hear it, or unless § 478.250.2 is implicated so that the plaintiff could designate the case as one to be heard under the practice and procedure before circuit judges (which is not this case). *See, e.g., Crossroads West Shopping Ctr. v. American Oil Co.*, 658 S.W.2d 445 (Mo.App.1983) (holding a circuit judge "acted without jurisdiction" when he heard Chapter 534 unlawful detainer suit without being assigned to it).

As explained below, *Crossroads* and other cases holding that only associate circuit judges have authority to try unlawful detainer actions under Chapter 534 (unless one or more of the § 534.060 exceptions attend) can no longer be followed. This is so because these cases predate the Missouri legislature's repeal of § 478.225 in 1989 and its concurrent amendment of the introductory clause of § 478.220 to read: "Circuit judges and associate judges may hear and determine all cases and matters within the jurisdiction of their circuit courts[.]" Missouri courts, when analyzing these changes, have consistently held that the legislature intended to *abol-*

*ish the jurisdictional differences* between the two categories of judges; that although "other statutes or local court rules may place limitations on what judge is assigned to hear a particular case or class of cases, it is clear that both circuit and associate circuit judges now have statutory jurisdiction to hear and determine all cases within the jurisdiction of their circuit court." *State ex rel. Drienik v. Clifford,* 944 S.W.2d 266, 268 (Mo.App.1997). *See also State v. Williams,* 46 S.W.3d 35, 38–39 (Mo.App.2001); *B.C. National Banks v. Potts,* 30 S.W.3d 220, 221–23 (Mo.App. 2000); *State ex rel. M.D.K. v. Dolan,* 968 S.W.2d 740, 743 (Mo.App.1998). Moreover, these cases hold that statutes or local rules that limit what judge can be assigned to hear a case or class of cases "are merely procedural guidelines that do not affect the subject matter jurisdiction" of the judge; consequently, a party waives any complaint about non-compliance with an assignment directive by not timely objecting about such failure. *Williams,* 46 S.W.3d at 39–40; *Potts,* 30 S.W.3d at 222–23 (Mo. App.2000).

Applying the reasoning and analysis found in *Williams,* 46 S.W.3d 35, *Potts,* 30 S.W.3d 220, *Dolan,* 968 S.W.2d 740, and *Drienik,* 944 S.W.2d 266, we conclude that the language in § 534.060 which declares that "[s]uch cases shall be heard and determined by associate circuit judges" does not limit the authority of a circuit judge to hear such cases, as Boyers contend. Based on those cases, we hold that a circuit judge has "jurisdiction" to hear a Chapter 534 unlawful detainer case even if neither of the two exceptions are implicated. Moreover, we do not find in this record that Boyers ever objected to the trial court about the court's alleged failure to follow assignment procedure; consequently, they waived any potential objection they may have had. *Williams,* 46 S.W.3d at 39–40; *Potts,* 30 S.W.3d at 222–23. Boyers' argument that the judge trying this case was without authority to try Count II has no merit. Point III is denied.

### Point IV: Judgment On Count III For Punitive Damages Only

Boyers' fourth point has merit when it maintains, *inter alia,* that the trial court committed reversible error when it awarded Plaintiff punitive damages on Count III (conversion count) when there was no underlying or predicate award of actual or nominal damages. Missouri follows the general rule that there can be no recovery of punitive damages if there are no actual or nominal damages. *Koenig v. Skaggs,* 400 S.W.2d 63, 68 (Mo.1966); *Misischia v. St. John's Mercy Med. Center,* 30 S.W.3d 848, 866 (Mo.App.2000); *Boshers v. Humane Soc. of Mo., Inc.,* 929 S.W.2d 250, 256 (Mo.App.1996). Since the trial court awarded neither actual or nominal damages on Plaintiff's conversion count, there was no basis for punitive damages. The trial court erred in entering a $3,500 judgment for punitive damages on Count III, and it must be reversed.

The judgment of the trial court is affirmed in all respects except as to the punitive damage award on Count III; that part of the judgment that purports to award $3,500 as punitive damages on Count III is reversed.

# APPENDIX "A"

09/20/2001 12:02 5735682133 DON RHODES PAGE 04

 **MISSOURI PUBLIC SERVICE COMMISSION**
**FIELD INSPECTION REPORT**

301 W. HIGH STREET, P.O. BOX 360
JEFFERSON CITY, MO 65102
PHONE (314) 751-7178

| Complainant: Ida Cooper | | Disk# 1 |
|---|---|---|
| Address: Rt.5 Box 424 | City: Poplar Bluff, Mo. 63901 | |
| Telephone Number: 573-686-5454-Work | Mother in-law 573-686-0650 | |
| Make of Home: Mid-America Homes, Inc | Serial Number: MAKY1962200 | |
| HUD Label Number: TRA296422 | Size: 16X80 (76) | |
| Date Received: June 22, 1996 | Date Inspected: June 27, 1996 | |
| Inspectors Name: Tom Jensen & Gene Winn | | |

| Item: | (FINDINGS) |
|---|---|
| 1) | Evidence of a water leak. Master bedroom, on the back door side. ( Roof maybe leaking in this area.) 3280.307 |
| 2) | Floor decking is loose. There is also a 1" crown in the center of the floor in the kitchen. 3280.305 (g)(1) |
| 3) | Vinyl flooring has about a 15" cut. This is next to the Island base cabinets. 3280.305 (g)(2) |
| 4) | Hallway wall panels loose. These panels are on both sides of the front door. 3280.305 (f)(2) NOTE: a. Ceiling previously repaired by Mfg. and poorly done. Small holes in ceiling in master bedroom. b. The carpet throughout the home is wrinkled. |
| 5) | Rear door frame and wall stud damaged by dealer upon delivery. Door will not close properly. 3280.405(d) & 3280.305 (f) |
| 6) | Siding on the back door side is damaged and will need to be replaced. About a 3" hole torn open by dealer upon delivery, under master bedroom window. 3280.307 (a) |
| 7) | Front door will not close and latch. Door is out of square. 3280.303 (b) |
| 8) | Front bedroom door is out of square and will not close and latch. Back door side. 3280.303 (b) NOTE: This home was damaged by dealer upon delivery: |
| 9) | Front hitch is damaged and bent and will need to be replaced. Repair per DAPIA approved method. |
| 10) | Two cross members at the hitch end are bend and need to be replaced. Repair per DAPIA approved method. |
| 11) | Front cross I-beam at hitch end is bent and will need to be replaced. Repair per DAPIA approved method. |
| 12) | One cross member in the rear end is bent and will need to be replaced. Repair per DAPIA approved method |
| 13) | Outrigger bent on hitch end front door side. Outrigger will need to be replaced. Repair per DAPIA appoved. |
| 14) | Home Not Set Up To State Standards: a. Home is 1" out of level from the front door too the hitch end. b. Piers are not set properly. Required is 2' from each end and no more than 10' on center. Refer to set up manual. |

| Action Requested: Mfg. To correct items 1 thur 4 | Dealer to correct items 5 thur 15 | Page 1 of 2 |
|---|---|---|
| Notification to Mfg: Mid-America Homes, Inc. | | Time Allowed: 30-Days |
| Notification to Dealer: Bluff City Mobile Homes Sales, Inc. | | Time Allowed: 30-days |

170

**MISSOURI PUBLIC SERVICE COMMISSION**
**FIELD INSPECTION REPORT**

301 W. HIGH STREET, P.O. BOX 360
JEFFERSON CITY, MO 65102
PHONE (314) 751-7179

| Complainant: Ida Cooper | Disk# 1 |
|---|---|
| Address: Rt. 5 Box 424 | City: Poplar Bluff, Mo. 63901 |
| Telephone Number: 573-686-5454- Work | Mother in-law: 573-686-0650 |
| Make of Home: Mid-America Homes, Inc. | Serial Number: MAKY1962200 |
| HUD Label Number: TRA296422 | Size: 16x80 (76) |
| Date Received: June 22, 1996 | Date Inspected: June 27, 1996 |

Inspectors Name: Tom Jensen & Gene Winn

| Item: | (FINDINGS) |
|---|---|
| | c. No vapor barrier was used. Roofing paper or a 6-mil poly is to be used. Refer to set up manual.<br>d. Exterior door lights were not installed. Bare wires hanging out. 3280.807 (a)<br>e. Fireplace chimney is not tall enough. The extension for this chimney is inside the master bedroom closet. 3280.709 (g)(1)(vii)<br>f. No base pads under the door blocks. Also some door blocks do not touch the frame. Refer to set up manual<br>g. Some piers do not have cap blocks. Also cap blocks need to cover the entire top of the inner vertical cell.<br>h. All piers have split base pads. Piers are too have solid base pads, 16"X16"X4". Refer to set up manual. |
| 15) | Home Is Not Anchored To State Standards:<br>a. This home has cross drive anchors which are not approved for this location. Auger anchors for soil type 2 are to be used.( Soil tests intakes 500 inch lbs. at 2' at this location.)<br>b. Frame straps are not properly attached to the frame. Frame straps shall be drawn tight. Positioned so that they come off the top of the I-beam and wrapping all four corners of the beam.<br>c. Home does not have the proper number of anchors. Anchors are to be no more than 13' on center and the first one no more than 2' from the end. Refer to set up manual.<br>d. Over the roof straps were not installed. Refer to set up manual.<br><br>NOTE: Anytime that a Auger anchor is used and is not in line with the frame strap, a stabilizer plate or device is to be used.<br><br> |

| Action Requested: Mfg. to correct items 1 thur 4 | Dealer to correct items 5 thur 15 | Page 2 of 2 |
|---|---|---|
| Notification to Mfg: Mid-America Homes, Inc. | | Time Allowed: 30-Days |
| Notification to Dealer: Bluff City Mobile Homes Sales, Inc. | | Time Allowed: 30-Days |